Anthony THOMAS, Plaintiff-Appellant,

v.

The U. S. POSTAL INSPECTION
SERVICE, Defendant-Appellee.

No. 80-1270.

United States Court of Appeals,
Tenth Circuit.

April 27, 1981.

William P. Porter, Oklahoma City, Okl.,
for plaintiff-appellant.

Larry D. Patton, U. S. Atty., and Stan
Twardy, Asst. U. S. Atty., Oklahoma City,
Okl., Stephen E. Alpern, Associate General
Counsel, and Lynn D. Poole, Stewart A.
Broder, for U. S. Postal Service, Washington, D. C., of counsel.

Before PICKETT, BARRETT and WILLIAM E. DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Anthony Thomas brought this action against the United States Postal Service for declaratory and injunctive relief arising out of refusal of the Service to process his application for appointment as a Postal Service Inspector.[1] The complaint alleges that the refusal was a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, and a violation of the due process and equal protection provisions of the Fifth and Fourteenth Amendments to the United States Constitution. The trial court dismissed the complaint for lack of jurisdiction and failure to state a claim upon which relief could be granted.

The record discloses that Thomas was an employee of the United States Postal Service and desired to become a Postal Inspector. Approximately ten days before his thirty-fifth birthday, Thomas' application for such an appointment was received in the appropriate office of the Postal Service. It was established that the minimum time for the required investigation of such an application by the Service was thirty-three days. The application was rejected because of the age limitations of the Postal Service Regulations. In 1974, Congress, recognizing the hazardous nature of the work of

---

1. Postal Inspectors constitute the investigative and criminal law-enforcement employees of the United States Postal Service.

law-enforcement officers and others, amended the retirement provisions relating to such employment. P.L. 93–350, 2 U.S. Cong. & Adm.News 1974, 3698. This Act requires retirement at the age of fifty-five years. 5 U.S.C. § 8335(b). It also established a procedure authorizing the head of any agency to determine and fix minimum and maximum ages within which law-enforcement officers may be employed. 5 U.S.C. § 3307(d). In compliance with this procedure, the Postal Service fixed the maximum age for a beginning Postal Inspector at thirty-four years.

The ADEA specifically provides that it shall apply only to employees or applicants for employment who are at least forty years of age. 29 U.S.C. § 631. Thomas does not challenge the court's ruling that he was not within the coverage of this Act. His reliance for reversal is apparently upon constitutional grounds.[2] From a study of the record, it is apparent that the only constitutional issue is whether there is a "rational basis" for the legislation fixing age limits of persons employed as United States Postal Inspectors.

In a variety of cases, the United States Supreme Court has had occasion to consider the validity of statutes and regulations relating to issues similar to those presented in the instant case. It is now well established that the rule of "strict scrutiny" in testing the constitutionality of such legislation shall not be applied, but the test shall be whether the statute or regulation has a "rational basis" for the purpose sought to be accomplished. In *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), the Court considered a statute which required employees of the United States Foreign Service to retire at the age of sixty years. In upholding the age limitation provisions, the Court stated, at 97, 99 S.Ct. at 943:

> . . . The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

The District Court and the parties are in agreement that whether § 632 violates equal protection should be determined under the standard stated in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307 [, 96 S.Ct. 2562, 49 L.Ed.2d 520] (1976), and similar cases; and thus that the section is valid if it is "rationally related to furthering a legitimate state interest."

A Massachusetts statute made mandatory the retirement of uniformed policemen at fifty years of age. The statute was challenged on constitutional grounds and upheld by the Supreme Court. In *Massachusetts Board of Retirement v. Murgia, supra*, at 313, 96 S.Ct. at 2566, the Court observed:

> This Court's decisions give no support to the proposition that a right of governmental employment *per se* is fundamental. . . . Accordingly, we have expressly stated that a standard less than strict scrutiny "has consistently been applied to state legislation restricting the availability of employment opportunities." . . .

In upholding the statute, the Court further stated, at 314, 315, 96 S.Ct. at 2567:

> In this case, the Massachusetts statute clearly meets the requirements of the Equal Protection Clause, for the State's classification rationally furthers the purpose identified by the State: Through mandatory retirement at age 50, the legislature seeks to protect the public by

---

**2.** In Appellant's brief it is stated:

> If the decision of the Court and the regulation of the Postal authorities were supported by any evidence, substantial or otherwise, showing that the maximum hiring age of 35 and the mandatory retirement age of 55 were reasonable for excluding Appellant from employment as a Postal Inspector, and in fact, if said regulation had some reasonable basis and fact, it is admitted that the Appellant would not have a case, ignoring the Constitutional arguments.

assuring physical preparedness of its uniformed police. Since physical ability generally declines with age, mandatory retirement at 50 serves to remove from police service those whose fitness for uniformed work presumptively has diminished with age. This clearly is rationally related to the State's objective....

*See also San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

It is obvious that Congress, by the passage of the 1974 amendments to the federal law-enforcement retirement statutes, recognized the need for comparatively young, strong, and vigorous personnel in law-enforcement departments of the various federal agencies.[3] In its request for authority to limit the age of appointment of beginners to the position of postal inspectors to thirty-four years, the Postal Service, after describing the nature of the duties of Postal Inspectors, stated:

> Incident to the enforcement of these statutes, Postal Inspectors regularly face the hazards inherent in the investigation, detention, and apprehension of criminals. Such hazards, coupled with the uncertainty found in virtually every confrontation with criminal suspects, require Inspectors to possess well-developed physical and mental reflexes, an ability to make quick, rational decisions, and the capability to ensure the physical safety of themselves and others. These traits, for example, are essential during the investigation of professional post office burglars and armed robbers, the controlled delivery of narcotics to suspects, undercover assignments involving a "buy" of money orders, checks, securities, and other items stolen from the mail, and in contact with informants, usually part of the criminal element themselves. Inspectors encounter equally hazardous situations during the investigations of individuals who use the mails to carry out extortion plots, to

transmit bombs or other sinister devices with the intent to kill or maim, or to illegally transmit narcotics and dangerous drugs. Lengthy surveillances and long, irregular hours are often required.

This policy furnishes the Postal Service with a continuous staff of young, moderately young, and experienced Postal Inspectors. The system is not only a rational, but a sensible one.

AFFIRMED.

---

**3.** 2 U.S.Cong. & Adm.News 1974, 3699.