**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**COUNTY OF ALLEGHENY and Commonwealth of Pennsylvania, and Richard Thornburg, individually and in his capacity as Governor, and Edward Biester, individually and in his capacity of Attorney General, Defendants.**

Civ. A. 79–1531.

United States District Court, W. D. Pennsylvania.

Aug. 11, 1981.

---

**1330**

Mary E. Lewis, Craig R. McKay, Pittsburgh, for plaintiff.

Thomas M. Hough, Alton P. Arnold, Jr., Pittsburgh, for defendants.

## OPINION

ZIEGLER, District Judge.

In this action, we are asked to determine whether the avowed policy of the County of Allegheny—by which it refuses to consider applicants over the age of 35 for positions as police officers—violates the Age Discrimination in Employment Act of 1967 (ADEA).[1]

The central facts are not in dispute. The County of Allegheny, Pennsylvania, has for many years maintained a policy of refusing to permit individuals over the age of 35 to take the police examination, and has refused to hire such individuals as police officers. This policy is predicated on a state statute, applicable to Allegheny County alone, which provides that:

> No person shall be eligible to apply for examination (for county employment) unless he is more than eighteen years of age and, with respect to applicants for the

police force not over thirty-five years at the date of application . . . .

16 P.S. § 4510.

The Equal Employment Opportunity Commission instituted this action on behalf of three individuals claiming that Allegheny County's hiring policy violates federal law. Each claimant was denied the opportunity to take the County Police Examination, and was not considered for appointment to the police force because he was older than thirty-five.

The EEOC argues that the County's hiring policy amounts to a *per se* violation of ADEA, and has moved for summary judgment. The Commission seeks broad injunctive relief to dismantle the County's hiring policy, as well as money damages, and immediate appointment plus retroactive seniority for each individual plaintiff.[2]

For the reasons set out below, we conclude as a matter of law that the County of Allegheny has engaged in a policy of discrimination in violation of the Age Discrimination in Employment Act of 1967. We will order injunctive relief to prohibit continuation of the hiring practice, and order that the three individual plaintiffs be administered the County Police Examination, and then considered for employment if otherwise qualified.

However, we also conclude that material issues of fact remain as to whether the individual plaintiffs have sustained any injury as a result of the discriminatory hiring policy. We therefore deny the motion of the EEOC for summary judgment as it relates to the individual plaintiffs' claims for backpay, appointment, retroactive seniority, and liquidated damages, pending further development of the facts.

### I.

The Age Discrimination in Employment Act of 1967 makes unlawful any age dis-

---

1. 29 U.S.C. § 621 *et seq.*

2. This court permitted the plaintiff to add as defendants the Commonwealth of Pennsylvania, Governor Richard Thornburg, and Attorney General Edward Biester, because the injunctive relief sought here would be directed in

part at those parties. However, there has been no evidence presented, at least thus far, that those defendants have engaged in age discrimination or can be held liable for damages. The additional defendants have, to date, played an insignificant role in this litigation.

crimination by any employer in extending employment or in the hiring of potential employees. As originally enacted, the statute proscribed discrimination against members of the workforce between the ages of forty and sixty-five. The 1978 amendment to the Act extended protection to employees between the ages of forty and seventy.[3]

The Act reads as follows in relevant part: It shall be unlawful for an employer—
(1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1).

The enactment of ADEA, and the subsequent amendments, reflect a national awareness of the injustice that age discrimination imposes upon "elderly" citizens. Congressional testimony surrounding the passage of this statute suggests two central purposes, to wit, the reduction of unemployment, welfare, and waste which accompanies the underutilization of experienced workers; and, the alleviation of economic, psychological and health problems faced by the individual victims of discrimination. *See, Note, Damage, Remedies Under the Age Discrimination in Employment Act,* 43 Brooklyn Law Review 47, 47–48 (1977).

Although ADEA was enacted separately from Title VII of the Civil Rights Act of 1964,[4] the two statutes share a common heritage, and are generally regarded as lineal descendents. As the Supreme Court has observed:

There are important similarities between the two statutes, to be sure, both in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the prohibitions of the ADEA were derived *in haec verba* from Title VII.

*Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1977).

■ As a procedural matter, the burdens of proof in Title VII cases are to a large extent applicable to the area of age discrimination. *See, Loeb v. Textron, Inc.,* 600 F.2d 1003, 1015 (1st Cir. 1979). Under ADEA, and Title VII, a discrimination action is dissected into three procedural steps. *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5]

First, a plaintiff bears the burden of establishing, by a preponderance of the evidence, a "prima facie" case of discrimination. *McDonnell Douglas Corp. v. Green, supra,* at 802, 93 S.Ct. at 1824. Second, if the plaintiff satisfies the threshold test, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. Third, if the defendant carries this burden, the plaintiff must then be afforded the opportunity to prove by a preponderance of the evidence that the reasons suggested by the defendant are not legitimate, but are a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. *See also,* Schlei and Grossman, Employment Discrimination Law, at 401–402 (1976). Our first task here is to determine whether the EEOC has established a prima facie case of age discrimination.

In the leading case of *McDonnell Douglas Corp. v. Green, supra,* the Supreme Court articulated the four-part test which a plaintiff must satisfy in order to establish a *prima facie* case of employment discrimination. In that action for race discrimination predicated on Title VII, the Court found that the plaintiff bore the burden of proving the following elements:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, af-

---

**3.** Age Discrimination in Employment Act Amendment of 1978, Pub.L.No. 95–256, § 2(a), 92 Stat. 189.

**4.** 42 U.S.C. § 2000(e) *et seq.*

**5.** *McDonnell Douglas* was a civil action in which the plaintiff alleged racial discrimination in hiring based on Title VII.

ter his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications . . . .

411 U.S. at 802–805, 93 S.Ct. at 1824–1825, 36 L.Ed.2d 668.

Countless courts have adopted some version of the *McDonnell Douglas* test in suits brought under ADEA. See, *e. g., Rodriguez v. Taylor*, 569 F.2d 1231, 1239 (3d Cir. 1977); *Wilson v. Sealtest Foods Division of Kraftco Corp.*, 501 F.2d 84, 86 (5th Cir. 1974); *Loeb v. Textron Inc., supra*, 600 F.2d at 1003. These courts have stressed, however, that the *McDonnell Douglas* test is not to be applied rigidly in age discrimination cases; rather, flexibility is the watchword.

> We conclude that the operative principles behind *McDonnell Douglas* are applicable in age cases as in Title VII cases, but that the *McDonnell Douglas* formula . . . does not set forth immutable guidelines for the decision of all discrimination cases. Rather, it is applicable to a greater or lesser degree in varying circumstances; the judge should understand its basis and apply it functionally as circumstances warrant.

*Loeb v. Textron, Inc., supra*, 600 F.2d at 1010.

In the instant case two distinct claims are advanced in one lawsuit. First, the EEOC contends that the County's hiring policy, as an overall scheme, violates the provisions of ADEA. In this regard, the Commission seeks broad equitable relief prohibiting the County from continuing the policy of excluding applicants based on age. Secondly, the EEOC urges that the policy has been applied unlawfully as against three individual plaintiffs, and seeks monetary damages and other relief on their behalf.

Moulding the *McDonnell Douglas* test to the circumstances of this case, we conclude the EEOC has established as a matter of law that the County of Allegheny engaged in a policy or scheme of age discrimination.

It is uncontested that the County rejected applicants over the age of 35, and denied them the opportunity to take the County Police Examination.[6] It is uncontested that the County adopted a general policy of refusing to hire police officers over the age of 35.[7] And there is also no dispute that opportunities for these positions remained open to individuals, with otherwise similar qualifications, between the ages of 18 and 35, pursuant to the stated policy of the County.

We conclude that this uncontroverted evidence is sufficient to establish a prima facie case of a broad scheme or policy of age discrimination. The burden now shifts to defendant to justify this policy of disparate treatment.

II.

In *McDonnell Douglas Corp. v. Green, supra*, the Court described the employer's burden as follows. It must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802. For many years, courts of appeals have differed as to whether the entire burden of persuasion shifts to the employer, or merely the burden of production.[8] *See*

6. On July 20, 1977, Guy Gula attempted to sit for the Allegheny County Police Examination. By letter of July 20, 1977, Donald E. Kovac, Chairman of the Allegheny County Civil Service Commission for Allegheny County Police and Firemen, advised Gula that the "age requirement for candidates . . . is 18–35 years of age" and that "you do not meet this requirement and therefore are ineligible to take this test." Plaintiff's Request for Admissions of Fact—First Set Exhibit D.

7. On October 9, 1976, Frank J. Segriff sat for the Allegheny County Police Examination. By letter of October 29, 1976, Chairman Kovac advised that because he did not meet the age requirement of 18 and 35 years, Segriff could not be considered for appointment. Plaintiff's Request for Admissions of Fact—First Set Exhibit E.

8. If the entire burden of persuasion shifts to the defendant, it must affirmatively prove that this action was nondiscriminatory. *See, e. g., Hodgson v. First Fed. Sav. & Loan Ass'n*, 455 F.2d 818, 822 (5th Cir. 1972). If it is merely the burden of production which shifts to the employer, it need only come forward with *some* evidence concerning a valid, non-discriminatory justification for its action. *See, e. g., Lau-*

note, *The Age Discrimination in Employment Act of 1967*, 90 Harv.L.R. 380, 388–400 (1976).

However, all disagreement has been put to rest by the Supreme Court's recent decision in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, (1981). In that case, a sex discrimination action predicated on Title VII, the Supreme Court re-examined the *McDonnell Douglas* test, and concluded that only the burden of production shifts to a defendant once a plaintiff proves a *prima facie* case:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason .... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

*Texas Department of Community Affairs v. Burdine, supra*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207.

■ In light of this clear teaching, we find that only the burden of production has shifted to the County of Allegheny.[9] That is, the County must produce evidence that plaintiffs and other applicants over the age of 35 were rejected, or applicants under the age of 35 were preferred, for some legitimate, non-discriminatory reason. *Texas*

*Department of Community Affairs v. Burdine, supra*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. For the following reasons, we conclude that the County has failed to meet this burden.

ADEA provides two statutory justifications to exculpate an employer from liability. First, the defendant may invoke the so-called "BFOQ" exception, which allows an employer to factor age into the employment equation "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). Second, an employer may escape liability if he produces evidence that "the differentiation is based on reasonable factors other than age." *Id.* We conclude that the County of Allegheny has failed to produce evidence to justify its hiring policy under either exception.

### A. The BFOQ Exception

In order to fit within this statutory exception, the defendant must satisfy the two-pronged test formulated in *Usery v. Tamiami Trail Tours*, 531 F.2d 224, 236 (5th Cir. 1976). The burden is to demonstrate:

> (1) that the bfoq which it invokes is reasonably necessary to the essence of its business (here the operation of an efficient police department for the protection of the public), and (2) that the employer has reasonable cause, i. e., a factual basis for believing that all or substantially all persons within the class (in our case, persons over 35 years of age) would be unable to perform safely and efficiently the duties of the job involved, or that it is impossible or impractical to deal with persons over the age limit on an individualized basis.

*See also, Arritt v. Grisell*, 567 F.2d 1267, 1271 (4th Cir. 1977).

---

gesen v. Anaconda Co., 510 F.2d 307 (6th Cir. 1975).

9. Shifting evidentiary burdens and presumptions are merely tools employed to facilitate the plaintiff's task of proving liability in certain cases. If only the burden of production shifts to a defendant in Title VII cases, *a fortiori* this rule must apply in ADEA cases. The justification for lightening plaintiff's burden is less compelling in ADEA cases than Title VII. *See note, The Age Discrimination in Employment Act of 1967, supra*, 90 Harv.L.R. at 388–400.

The record is barren of evidence to support a finding that the County's policy of refusing to hire police officers over the age of 35 constitutes a BFOQ. There is no evidence that the refusal to hire individuals over 35 is reasonably necessary to the functioning of a proficient police force. Nor is there evidence that substantially all persons over the age of 35 are unable to perform safely and efficiently the duties of the job. Nor is there evidence that it is impractical or impossible to deal with the physical and mental qualifications of persons over the age of 35 on an individualized basis. Absent such evidence, the County may not justify its policy on the basis of the BFOQ defense, which has been characterized as an "extremely narrow" exception. *Dothard v. Rawlinson*, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977).[10]

B. *Reasonable Factors Other Than Age*

The County primarily seeks to justify its policy by invoking the second exception to ADEA. It argues that its refusal to hire individuals over the age of 35 "is based on reasonable factors other than age ..." 29 U.S.C. § 623(f)(1).

The theory advanced by the County is novel. It argues that applicants over the age of 35 were excluded from consideration as County Police Officers, because the County sought to comply with a Pennsylvania statute mandating such a limitation.

The Second Class County Code,[11] promulgated by the Pennsylvania General Assembly and currently in effect, provides in part:

> No person shall be eligible to apply for examination (for county employment) unless he is more than eighteen years of age and, *with respect to applicants for the police force not over thirty-five years of age at the date of application* ....

16 P.S. § 4510 (emphasis added). A companion section of the Code provides that county officials who permit any individual to be hired on the police force above the age of thirty-five, in violation of the above provision, may be fined or imprisoned or both.[12]

The County insists that its refusal to permit applicants over the age of 35 to be hired as police officers was based upon a reasonable factor other than age; namely, compliance with the Second Class County Code. The County characterizes its practice as "statute dependent" rather than "age dependent," emphasizing that violations of the County Code could bring criminal penalties.

As much as we may sympathize with the County's dilemma in this case, in our judgment the Second Class County Code does not constitute a "reasonable factor other than age" within the meaning of 29 U.S.C. § 623(f)(1).

The "reasonable factor" justification is distinguishable from the BFOQ exception because the former is not really an "exception" to ADEA at all. The employer who invokes the BFOQ exception essentially admits that differentiations were made on the basis of age, but seeks to legitimate those differentiations by showing that they were necessary given the nature of the business. The employer who invokes the "reasonable factor" justification, on the other hand, asserts that there was no differentiation on the basis of age, because its employment decisions were based on some other legitimate consideration. *See* 4 Larson, Employment Discrimination, § 100.21, p. 21–65 (1980).

The Secretary of Labor has listed various factors, by way of example, which might support a defense under the "reasonable factor" justification. These are:

---

**10.** This conclusion is bolstered by *Rodriguez v. Taylor*, 428 F.Supp. 1118, 1121, vacated 569 F.2d 1231 (3d Cir. 1977).

**11.** Act of July 28, 1953, P.L. 723, *as amended* 16 P.S. § 4510.

**12.** § 4522. PENALTIES—Any county commissioner or anyone acting for the board of county commissioners who shall cause any person to

be appointed to or promoted in the police force or as a fireman or fire inspector contrary to the provisions of this article, or who violates any of the provisions of this article, shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine of not more than five hundred dollars ($500) or suffer imprisonment not exceeding one year, or both. As amended 1963, Aug. 13, P.L. 662, § 3.

(1) Physical fitness requirements, so long as the minimum standards are reasonably necessary for the specific work to be performed and are uniformly applied.

(2) Evaluation factors such as quantity or quality of production, or educational level, so long as such factors are shown to have a valid relationship to the job requirements and are uniformly applied.

(3) Conditions as to the number or schedule of hours to be worked.

(4) The use of validated employee tests, provided such tests are specifically related to the requirements of the job. However, situations where the test is the sole factor in the selection procedure will be carefully scrutinized because younger persons allegedly are more "test-wise" than older persons.

(5) Refusal to hire relatives of current employees.[13]

In a similar vein, courts have found that lack of training for a particular job,[14] chronic tardiness,[15] or elimination of an opening,[16] might serve as "reasonable factors" to legitimize the discharge of employees within the protected age group. Thus, the "reasonable factor" justification merely enables an employer to rebut a *prima facie* showing of age discrimination by producing evidence that its actions were not age related, but turned on some other legitimate consideration. In the instant case, even if the County proved that it adopted the age limitation based upon a good faith belief concerning its obligations under state law, this would not fall within the "reasonable factor" justification. Whatever its motives, the fact remains that in hiring police officers, the County based its employment decisions on the age of the applicants.[17]

█ It is important to note that age need not be the sole factor motivating an employer in order for a violation of ADEA to occur. So long as age is a "determinative factor" in the adverse employment decision, a violation results. *See Loeb v. Textron, supra,* 600 F.2d at 1019; 29 C.F.R. § 860.-103(c).[18]

In one sense, the County's hiring policy may have been based upon its perception of duty under state law. Nonetheless, we cannot escape the conclusion that, in a very real sense, age was a "determinative factor" in rejecting the applicants over the age of 35 for positions on the police force.[19]

We find that the County has failed to articulate a legitimate, non-discriminatory justification for its hiring policy. This court concludes, as a matter of law, that the County engaged in a policy of age discrimination. It is precisely this type of hiring practice, grounded in stereotypes of "elderly" individuals as less capable than their younger counterparts in the workforce, that ADEA was meant to dismantle.

---

**13.** 29 C.F.R. § 860.103(f), 860.104(a)(1), (b) and (c) (1968).

**14.** *Hinote v. Dworshak Dam Constructors,* 6 EPD P8892 (D. Idaho, 1973).

**15.** *Brennan v. Reynolds & Co.,* 367 F.Supp. 440 (D.Ill.1973).

**16.** *Moses v. Falstaff Brewing Co.,* 550 F.2d 1113 (8th Cir. 1977).

**17.** The existence of a state statute mandating such an age requirement, and attendant criminal penalties, may be relevant to the County's intent, motivation, or willfulness. This may be relevant, therefore, in considering whether liquidated damages are appropriate.

**18.** 29 CFR § 860.103(c) provides as follows: It should be kept in mind that it was not the purpose or intent of Congress in enacting this Act to require the employment of anyone, regardless of age, who is disqualified on grounds other than age from performing a particular job. The clear purpose is to ensure that age, within the limits prescribed by the Act, is not a *determining factor* in making any decision regarding hiring, dismissal, promotion, or any other term, condition or privilege of employment of an individual. (emphasis added)

**19.** Where state and federal law conflict, state law is pre-empted by virtue of the Supremacy Clause of the United States Constitution. *See Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824). Consequently, reliance on a state statute which runs afoul of federal law will not insulate an employer from liability for employment discrimination. *See, e. g., Rosenfeld v. Southern Pacific Company,* 444 F.2d 1219, 1226–27 (9th Cir. 1977).

We conclude that the County of Allegheny must be enjoined from continuing to exclude applicants over the age of 35 for positions as county police officers. Furthermore, the Commonwealth of Pennsylvania must be enjoined from enforcing those provisions of the Second Class County Code which mandate such an age requirement, namely, 16 P.S. §§ 4510 and 4522. Finally, the three plaintiffs, and all other individuals within the protected age group, must be permitted to sit for the County Police Examination at the earliest possible opportunity, and be considered for employment on an equal basis with all other applicants.

### III.

The EEOC urges that the individual plaintiffs are entitled to additional relief. Specifically, the Commission contends that each plaintiff is entitled to immediate appointment upon successful completion of the Police Examination, retroactive seniority, backwages running from the date of the discriminatory actions, and an equal amount of liquidated damages. The EEOC argues that, once age discrimination has occurred in violation of the Act, the court is bound to award individualized relief.[20]

■ We disagree. Thus far the EEOC has demonstrated, as a matter of law, that the County maintained a policy or practice in hiring police officers in violation of ADEA. The Commission has not demonstrated, as a matter of law, that the individual plaintiffs are victims of that discrimination and entitled to the full gamut of relief authorized by law.

■ If the three plaintiffs demonstrate entitlement to damages and other individual relief under the Act, a "second phase" of the lawsuit is required. *See Rodriguez v. Taylor, supra*, 569 F.2d at 1239. Essentially, each individual bears the burden of demonstrating that, but for the discriminatory hiring practice, he would have likely been hired by the employer:

[A]n employee who has prevailed in proving that an employer committed a *per se* violation of the ADEA shoulders the initial burden of production to present a prima facie case of entitlement to damages. This burden is discharged upon a showing that at the time of the unlawful discrimination (1) vacancies existed from which plaintiff was impermissibly excluded, and (2) that the plaintiff possessed physical and mental capabilities generally required of employees performing the type of work for which he applied.

*Rodriguez v. Taylor, supra*, 569 F.2d at 1240.[21]

■ The reason for this approach is sound. The paramount concern in fashioning relief under ADEA is to recompense the victim, and restore the person to the economic position that would have obtained but for the intervening unlawful conduct of the employer. *Rodriguez, supra*, 569 F.2d at 1238. Thus it would thwart the central purpose of the Act, if courts could award damages to every person who appeared in a federal forum and demonstrated that an

**20.** The enforcement provision of ADEA, 29 U.S.C. § 626(b), specifically adopts the remedies enumerated in Sections 16 and 17 of the Fair Labor Standards Act, 29 U.S.C. §§ 216 and 217. Section 16(b) of the Fair Labor Standards Act provides as follows:

Any employer who violates ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages. Any employer who violates ... shall be liable for such legal or equitable relief as may be appropriate ... including without limitation employment, reinstatement, promotion and the payment of wages

lost and an additional equal amount as liquidated damages ... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

**21.** Once each plaintiff meets this prima facie burden of entitlement to damages, the burden shifts to the employer to prove that plaintiff would not have been hired even absent discriminatory age barriers. *Rodriguez, supra*, 569 F.2d at 1240. "The defendant must, therefore, adduce evidence of either no job vacancies or plaintiff's lack of qualifications for the particular job." *Id.*

employer engaged in a policy of age discrimination. The purpose of the statute is to make whole the victims of discrimination; each individual must therefore demonstrate with particularity the loss he or she sustained as the result of the proven discrimination.[22]

On the basis of the scant evidence before us, we cannot conclude as a matter of law that these plaintiffs have demonstrated an entitlement to individual damages or other relief. The sole evidence of record, with regard to the qualifications of the three individual plaintiffs for positions as County policemen, are affidavits stating that each man currently holds a job relating to law enforcement.[23] There is nothing to indicate that, at the time they applied for positions as County policemen, they were physically and mentally qualified. This is essential if we are to determine that these individuals sustained some loss as the result of the County's hiring policy.[24]

■ Material issues of fact also remain as to the extent of any relief which may be granted. Awards of backpay are necessarily reduced by the amount earned by the claimant during the period in question. *See* Schlei and Grossman, Employment Discrimination Law, *supra*, at 414. Here, there is no evidence concerning the amount of backpay, if any, which would be owing to each plaintiff. Furthermore, liquidated damages may only be awarded under ADEA where the violation is willful. Questions remain as to whether the County's violation of the Act was actually willful. *See, Wehr v. Burroughs Corp.*, 619 F.2d 276 (3d Cir. 1980); 31 Baylor L.R., *supra*, at 220.

On the basis of this sparse record we cannot conclude, as a matter of law, that the three plaintiffs are deservant of the full range of relief available under ADEA. The issue of entitlement to backwages, liquidated damages, appointment to the County Police Force, and retroactive seniority, must await development of the facts.[25]

**22.** We agree that once each individual has established a prima facie case of entitlement to damages, which is not rebutted, back pay is awarded as a matter of course. *See* 31 Baylor L.R. at 219.

**23.** At the time of the discriminatory action, Lauren D. McCord had served for 12 years as a County Corrections Officer. Guy Gula is employed by the Brackenridge Boro Police Department. Frank J. Segriff is employed as a Police Sergeant with the Pittsburgh Police Department.

**24.** Furthermore, one of the plaintiffs, Frank J. Segriff, has not even produced evidence that he

was within the protected age group at the time the discriminatory action occurred. ADEA only provides relief for individuals between the ages of 40 and 70. Thus, if Segriff was between the ages of 35 and 40 at the time the County refused to consider his appointment, he would be entitled to no relief.

**25.** If the matter of damages proceeds to trial, we note that by virtue of a recent amendment to ADEA, there is a right to trial by jury on all factual issues. Age Discrimination in Employment Act Amendments of 1978, Pub.L.No. 95–256, § 4(a)(2), 92 Stat. 190.