**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**COUNTY OF LOS ANGELES, Defendant.**

Civ. A. No. 78–2522–LTL.

United States District Court, C. D. California.

Nov. 24, 1981.

Samuel Dashiell, Regional Atty., Robert T. Olmos, Supervisory Trial Atty., Martin K. Magid and Christine Masters, Trial Attys., E. E. O. C., Los Angeles, Cal., for plaintiff.

John H. Larson, County Counsel, and William F. Stewart, Chief, Labor Relations Div., Los Angeles, Cal., for defendant.

### Opinion

MALETZ, Judge:[1]

This is an action challenging the County of Los Angeles' policy of not hiring persons over the age of thirty five for entry level positions as Deputy Sheriff[2] in the County Sheriff's Department or as Helicopter Pilot in the County Fire Department. Plaintiff, the Equal Employment Opportunity Commission, alleges that this policy constitutes a violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (hereafter ADEA).[3]

Briefly described, the defendant County of Los Angeles' policy is not to consider any applicant over thirty five years of age for these jobs regardless of his qualifications for the position and regardless of how many years he may have been satisfactorily employed in a similar position by a different employer.

At the outset, defendant, relying upon *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), argues that the Tenth Amendment to the Constitution bars the application of the ADEA to defendant's hiring policies. In *National League of Cities*, the Supreme Court held that the application of federal minimum wage and overtime provisions to the states and their political subdivisions would impermissibly interfere with traditional aspects of state sovereignty in violation of the Tenth Amendment. Such regulation by Congress of a state as an employer, pursuant to Congress' power under the Commerce Clause, the Court concluded, is barred by the Tenth Amendment.

However, in enacting the ADEA and extending it to the states and their political subdivisions, Congress exercised its power to prohibit discrimination pursuant to section five of the Fourteenth Amend-

---

1. Of the United States Court of International Trade sitting by designation.

2. Deputy Sheriffs of the County of Los Angeles serve as law enforcement officers for various areas of the County outside of the City of Los Angeles. They also serve as correction officers for the County.

3. 29 U.S.C. § 623(a) provides:
   (a) It shall be unlawful for an employer
   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileg-

es of employment because of such individual's age;
29 U.S.C. § 623(f)(1) contains a Bona Fide Occupational Qualification exception which provides:
   (f) It shall not be unlawful for an employer...
      (1) to take any action otherwise prohibited under subsection (a) ... of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age;

ment. *Arritt v. Grissell,* 567 F.2d 1267 (4th Cir. 1977). This is important because Congress' power under the Fourteenth Amendment to regulate a state's employment practices is not limited by the strictures of the Tenth Amendment upon which *National League of Cities* is grounded. See, *Ex Parte Virginia,* 100 U.S. (10 Otto) 339, 446–48, 25 L.Ed. 676 (1879); *Marshall v. City of Sheboygan,* 577 F.2d 1 (7th Cir. 1978); *Arritt v. Grissell, supra; Usery v. Charleston Cty. Sch. Dist.,* 558 F.2d 1169 (4th Cir. 1977). On this basis the courts after *National League of Cities* have repeatedly upheld federal regulation of a state's or its political subdivision's employment practices. See, e. g., *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Marshall v. City of Sheboygan, supra; Arritt v. Grissell, supra; Usery v. Charleston Cty. Sch. Dist., supra.* Thus the court concludes that the Tenth Amendment does not bar the application of the ADEA to the defendant.

■ Defendant next points out that entry level Federal Bureau of Investigation agents, postal inspectors and firefighters must be under thirty five years of age. That age limit is authorized pursuant to 5 U.S.C. § 3307(d) which provides:

(d) The head of any agency may, with the concurrence of such agent as the President may designate, determine and fix the minimum and maximum limits of age within which an original appointment may be made to a position as a law enforcement officer or firefighter, as defined by Section 8331(20) and (21), respectively, of this title.

In defendant's view, section 3307(d) and the federal age limits currently in force indicate that an age limit of thirty five years is a bona fide occupational qualification (BFOQ) for law enforcement and firefighting positions.

The problem with this argument is that although section 3307(d) authorizes entry level restrictions for certain jobs, it does not *require* the adoption of any restriction.

And most importantly, that statutory provision neither authorizes nor approves the *specific* age restrictions currently in force. Nor, contrary to defendant's claim, is there any case support for the proposition that section 3307(d) establishes the age limit of thirty five. years as a BFOQ. Defendant relies on *Stewart v. Civiletti,* 25 FEP Cases (BNA) 1702 (D.D.C. Dec. 14, 1979). However, in that case the court upheld an entry age limitation for clerical employees not on the basis that an age limitation of thirty five constituted a BFOQ, but on the basis that the employees were law enforcement personnel within the meaning of section 3307(d). *Thomas v. U.S. Postal Inspection Service,* 647 F.2d 1035 (10th Cir. 1981)—also relied on by defendant—merely determined that a federal entry age restriction was not unconstitutional. And *Bowman v. U.S. Dept. of Justice,* 510 F.Supp. 1183 (E.D.Va. 1981), concerned the validity of a retirement provision and not section 3307(d).

These considerations aside, defendant concedes that its refusal to hire persons over the age of thirty five years constitutes a prima facie violation of the ADEA which will entitle plaintiff to relief unless that age limitation policy constitutes a BFOQ.

■ In order for that policy to constitute a BFOQ, it must first be shown that "the job qualifications invoke[d] to justify . . . [the] discrimination . . . [are] *reasonably necessary* to the essence of [the] business . . . ." [Emphasis in original.] *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 (5th Cir. 1976). In the present case, there is no dispute that defendant's job qualifications for health, strength, agility and physical performance are reasonably necessary.

■ In addition, defendant's age limitation can pass muster as a BFOQ only if the evidence shows *either* (1) that all or substantially all persons above that age are unable to meet defendant's health and physical performance standards; *or* (2) that there is no practical way to differentiate qualified from unqualified applicants

among persons over the age cutoff. *Tamiami*, 531 F.2d at 235–7.[4]

Preliminarily, the parties disagree as to who has the burden of proof on the issue of whether age is a BFOQ. Relevant on that issue is *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In that case, the Supreme Court outlined the respective burdens of the plaintiff and defendant on the question of the establishment of a BFOQ under Title VII of the Civil Rights Act of 1974 (*id.* at 1093):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [Citations omitted.] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Although *Burdine* involved Title VII of the Civil Rights Act of 1964 and not the ADEA, the language of the BFOQ provision of Title VII is virtually identical to the corresponding language of the ADEA. Compare 42 U.S.C. § 2000e–2(e) with 29 U.S.C. § 623(f)(1) of the ADEA. Given this similarity between Title VII and the ADEA, the Ninth Circuit has recently applied the teaching of *Burdine* to the ADEA. *Douglas v. Anderson*, 656 F.2d 528 (9th Cir. 1981).

■ In conformity with *Burdine* and *Douglas v. Anderson,* this court concludes that upon defendant's articulation of legitimate, nondiscriminatory reasons for its age restriction, the burden of proof as to whether age is a BFOQ lies with the plaintiff.

Against this background, defendant's first contention as to why age should be considered a BFOQ here is that persons over the age of forty years would be unable to adequately perform the tasks required by the jobs in issue. It is beyond dispute that these jobs are physically arduous and require strength, agility, good reflexes and the ability to perform such tasks as the running of appreciable distances and the lifting of heavy objects.

The evidence showed that as a general matter younger persons more often possess such characteristics and are more often able to perform such tasks than older persons. Nevertheless, as defendant concedes, qualified persons hired for these positions before they reach the age of thirty five are able to continue satisfactorily well beyond that age. Indeed, defendant currently employs numerous deputy sheriffs over forty years of age. Also, two of the nine helicopter pilots currently employed by the defendant are over forty. Given these considerations, the court finds it inexplicable that defendant refuses to consider for employment persons over thirty five years of age who are satisfactorily employed in similar jobs by other government agencies.

What is more, the record establishes that there is no strict relationship between age and physical ability. Thus, the overwhelming weight of the evidence demonstrates that many persons over the age of forty are capable of physically outperforming many persons under the age of forty years. Indeed, many persons over the age of forty possess the physical strength, agility and other characteristics needed for these jobs, while many persons under the age of forty lack these characteristics. The evidence also shows that persons lacking such characteristics may easily be distinguished from those possessing them by the use of simple, inexpensive and extremely reliable physical performance tests. This being the case, the general correlation between age and physical ability cannot serve as a justification for defendant's age restriction policy.

---

4. Defendant maintains that because the ADEA only applies to persons over the age of forty (29 U.S.C. § 631) the evidence need only show that an age cutoff of forty is justifiable. The point is of no consequence, however, since there was no meaningful difference in the evidence as to an age limit of forty as opposed to thirty five.

Defendant maintains though that age should be considered a BFOQ because of the generally higher rate of heart disease among older persons. In particular, defendant claims that abandonment of its age limitation would result in an increase in its hiring of persons suffering from undetected heart disease.

It is not disputed that a certain percentage of persons genuinely suffering from heart disease do not manifest such readily apparent symptoms as chest pain. The evidence indicates that the rate of such asymptomatic heart disease is approximately three percent among thirty five year olds. These figures do not, however, reflect defendant's actual risk of hiring asymptomatic sufferers of heart disease should its age restriction be voided. This is because such disease may in fact be detected by various medical procedures. Thus, simple electrocardiogram and cardiokymograph tests will detect 52 percent of all asymptomatic sufferers. Additionally, the evidence indicates that the Bruce Protocol, a stress electrocardiogram test on an inclined treadmill, coupled with an analysis of the individual's risk factors (such as weight, smoking habits, family history, etc.) is 99 percent accurate as a short term predictor of the likelihood of cardiac difficulty. All of these tests are inexpensive and easy to administer. Thus, only an extremely small percentage of all persons over the age of thirty five years applying for the jobs in question are likely to have asymptomatic heart disease and go undetected.

Applying the first prong of the *Tamiami* test to these facts, it is apparent from the record that all or substantially all persons above the age of forty years are not unable to meet defendant's health standards due to heart disease.

Turning to the second prong of the test, and considering that only an extremely small percentage of all persons currently barred by defendant's age restrictions are likely to have heart disease and go undetected by the available medical tests, the court concludes that in this regard it is not impractical for defendant to differentiate the qualified from the unqualified applicants. Thus on the second prong of the *Tamiami* test, defendant's age limit policy again fails to pass muster.

Nor is this conclusion altered by the fact that a very small number of persons may conceivably go undetected. In the court's view, *Tamiami* requires only a practical reliable differentiation of the unqualified from the qualified applicant, 531 F.2d at 236, not a perfect differentiation.

Defendant next contends that older persons will become unfit for these positions in a shorter time than younger persons. It stresses the evidence in the record indicating that the risk of heart disease increases with age. In essence, defendant's argument is that a voiding of its age policy will saddle it with an older work force which will more rapidly become unfit for the jobs in issue due to physical unfitness and heart disease. This, it is argued, will result in defendant receiving a less than optimal return on the initial training it provides its deputy sheriffs and helicopter pilots.

What the evidence showed, however, was that physical unfitness for these positions did not follow inexorably from the aging process. Thus, as a person grows older, physical fitness for the positions can be maintained by exercise and the control of weight gain. And as noted earlier, defendant currently employs a large number of deputy sheriffs over the age of forty who are performing satisfactorily.

Essentially these same arguments were rejected in *McMahan v. Barclay*, 510 F.Supp. 1114 (S.D.N.Y.1981). There the district court considered a hiring age limit of twenty nine years of age for police officers. While *McMahan* was decided on constitutional grounds, the court's discussion of whether age constitutes a BFOQ for police officers is applicable here (*id.* at 1116):

Before this Court, defendants advance the contention that the statute is valid as imposing a bona fide occupational qualification. However, the only justification offered for this contention is: (1) that younger police can serve for a longer period of time after being trained than

older recruits and (2) younger recruits will remain physically fit for longer periods of time. Were the Court to accept these justifications for imposing an age barrier of 29, little would be left of the concept that age discrimination, without some showing of a real need therefor, is impermissible. The argument that the investment in training younger recruits is more likely to be recouped than that in the training of older persons would negate the entire concept of protection against age discrimination. Obviously, this is a contention equally available to any employer of persons who must receive training.

And as the Fourth Circuit recently stated in *Smallwood v. United Air Lines*, 661 F.2d 303 at 308 (1981) "economic considerations ... cannot be the basis for a BFOQ—precisely these considerations were among the targets of the act."

Of course, given the fact that the ADEA has made age discrimination generally unlawful, defendant cannot prevail unless there is something distinctive about the jobs at issue here that makes age a relevant consideration. In this regard, defendant stresses the fact that the employer here is a public body and that any increment in cost associated with a voiding of its policy will therefore have to be met with public funds. This argument cannot be accepted in view of the action of Congress in 1974 specifically extending the ADEA to the states and their subdivisions. 29 U.S.C. § 630(b).

Defendant also emphasizes the public safety aspect of the jobs in issue here and once again relying upon evidence of increased incidence of heart disease among older persons argues that its policy minimizes the risk of employees being debilitated by a heart attack while responding to an emergency. In pursuing this argument, the defendant relies upon cases upholding entry age restrictions for inter-city bus drivers and airline pilots. See *Tamiami*, 531 F.2d 224 (bus drivers); *Hodgson v. Greyhound Lines*, 499 F.2d 859 (7th Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975) (bus drivers); *Murname v. American Airlines*, 482 F.Supp. 135 (D.D.C.1979) (airline pilots) but compare *Smallwood v. United Airlines, supra.* Police work, of course, concerns the safety of third persons but does not entail the direct and continual reliance of a large number of persons upon the individual officer's moment to moment physical vitality. Equally important, the record, as indicated previously, demonstrates that an individual's risk of suffering a heart attack is highly predictable.

Given the facts established at trial, the court concludes that plaintiff has met its burden of proving that age does not constitute a BFOQ for the jobs here at issue and that defendant's age limit for hiring violates the ADEA. *Accord, EEOC v. County of Allegheny*, 519 F.Supp. 1328 (W.D.Pa.1981).[5]

Pursuant to rule 58 of the Federal Rules of Civil Procedure, the parties shall submit within 15 days a proposed form of judgment.

---

5. In the *Allegheny* case, the district court held that the policy of the County of Allegheny in refusing to consider applicants over the age of thirty five for positions as police officers violates the ADEA.