**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,**

v.

**COUNTY OF LOS ANGELES, Defendant-Appellant.**

**No. 82–5083.**

United States Court of Appeals, Ninth Circuit.

Argued Oct. 8, 1982.

Submitted May 5, 1983.

Decided May 26, 1983.

See also, D.C., 531 F.Supp. 122.

John H. Larson, County Counsel, William F. Stewart, Chief, Labor Relations Div., Los Angeles, Cal., for defendant-appellant.

Judy Trent Ellis, E.E.O.C., Washington, D.C., for plaintiff-appellee.

Before TANG and FERGUSON, Circuit Judges, and SOLOMON,** District Judge.

TANG, Circuit Judge.

The County of Los Angeles (the County) appeals from the district court's judgment finding the County in violation of the Age Discrimination in Employment Act, *as amended,* 29 U.S.C. § 621 *et seq.,* (ADEA). The central issue is whether the district court properly found that age under 35 is not a Bona Fide Occupational Qualification (BFOQ) for entry level employment of deputy sheriffs and fire department helicopter pilots.

There is no dispute that the policy and practice of the County is to reject applications of persons 35 years and above who seek positions as deputy sheriff or fire helicopter pilots, and that they are rejected solely on the basis of age.[1]

At trial and on appeal the main factual dispute concerned the effectiveness of available testing in identifying individuals who have asymptomatic cardiovascular disease. The County emphasized the increase in cardiovascular disease in the 40–50 age group and the difficulty of identifying employees at risk. EEOC emphasized that the real issue was the present physical condition of the applicants and emphasized the accuracy of certain tests, when considered with individual risk factors such as smoking, weight, family history, etc.

The district court found that readily available tests were 99% accurate as a

---

** Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

1. The ADEA protects only persons between the ages of 40 and 70. 29 U.S.C. § 631(a). The district court found this to be of no conse-

quence at trial, finding "no meaningful difference in the evidence as to an age limit of forty as opposed to thirty five." *E.E.O.C. v. County of Los Angeles,* 526 F.Supp. 1135, 1139 (C.D. Cal.,1981).

"short term predictor of the likelihood of cardiac difficulty." 526 F.Supp. 1135, 1140. Based on this and other findings, the district court concluded that the County had failed to prove its BFOQ defense because "it is not impractical for defendant to differentiate the qualified from the unqualified applicants". *Id.*

## I.

### Legal Contentions

■ A. The County argues that the Supreme Court's decision in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), precludes application of the ADEA in this case, involving as it does essential public safety decisions by a local government.

This contention was rejected by the Supreme Court's recent decision in *E.E.O.C. v. Wyoming,* —— U.S. ——, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). That case involved a Wyoming Game and Fish Department supervisor's involuntary retirement at age 55 pursuant to Wyoming law. The Equal Employment Opportunity Commission (EEOC) sued on his behalf in district court, alleging an ADEA violation. The district court dismissed the suit, holding that under *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), Congress was without power to extend the ADEA to state law enforcement personnel, including game wardens. *E.E.O.C. v. Wyoming,* 514 F.Supp. 595, 600 (D.Wyo.1981). The Supreme Court reversed, concluding that the ADEA "does not 'directly impair' the State's ability to 'structure integral operations in areas of traditional governmental functions.'" 103 S.Ct. at 1062. The only difference between the case before us and *E.E.O.C. v. Wyoming* is that this case involves a maximum hiring age and *Wyoming* a mandatory retirement age. Under an ADEA analysis, however, this difference is not significant because both involve age-based classifications. Thus, the County's challenge to the application of the ADEA to state or local government law enforcement occupations under *National League of Cities v. Usery* must fail.

B. The County also argues that because the ADEA applies to federal as well as state employment, any age-related restrictions tolerated in federal occupations should apply equally to similar state and local occupations.

Congressional authorization of the use of maximum hiring ages in federal law enforcement occupations, 5 U.S.C. § 3307(d), was recently upheld against ADEA attack in *Stewart v. Smith,* 673 F.2d 485 (D.C.Cir. 1982). The County interprets *Stewart* as holding that Congress intended such authorization for age restrictions (in *Stewart,* maximum age 35 for entering federal law enforcement) to be an across-the-board exception to the ADEA. Because Congress intended the ADEA to apply equally to federal and state employment, the County argues, an exception to the ADEA or a BFOQ as a matter of law for state and local law enforcement maximum hiring ages must be recognized in this case.

The EEOC responds that the same Congress that enacted the federal maximum-hiring statute, 5 U.S.C. § 3307(d), extended the ADEA to state and local government employment. EEOC argues that because Congress failed to provide a *per se* exemption for state and local government hiring, none should be read into the ADEA. EEOC argues further that *Stewart,* relied on so heavily by the County, is not applicable to this case because *Stewart* involved the interpretation of the ADEA and 5 U.S.C. § 3307(d) which only applies to federal employees.

■ The *Stewart* court was faced with "reconciling" 5 U.S.C. § 3307(d) with the ADEA. 673 F.2d 485, 490. *Stewart* held that § 3307(d) created an exception to the ADEA, and that no BFOQ was necessary to justify the maximum age entry requirements for federal law enforcement officers. *Stewart* did not address the question presented here, which is whether the ADEA can apply differently to similar federal, state, and local occupations.

The Court in *E.E.O.C. v. Wyoming,* however, apparently considered and rejected

**1042**

the argument raised here by the County. In discussing the "well-defined federal interest in the [ADEA] legislation," the Court noted "incidentally, that the strength of the federal interest underlying the Act is not negated by the fact that the federal government happens to impose mandatory retirement on a small class of its own workers." 103 S.Ct. at 1064, n. 17. Chief Justice Burger argued in dissent that the ADEA regulated the states in their capacity as states, that Wyoming's choice of who would serve as law enforcement officers was an attribute of sovereignty, and that the ADEA directly impaired the states' ability to structure integral operations. 103 S.Ct. at 1068–72 (Burger, C.J., dissenting). In the course of this discussion, Chief Justice Burger argued that "[I]t is not wholly without significance that Congress has not placed similar limits on itself in the exercise of its own sovereign powers." *Id.* at 1068. *See also id.* at 1069–70 (Burger, C.J., dissenting) (discussing Congressionally enacted exceptions to ADEA for federal law enforcement officers); *id.* at 1071 (Burger, C.J., dissenting) (noting Congressional authorization for mandatory retirement in Armed Services and Foreign Service). Thus it is clear that the County's argument was before the Court in *E.E.O.C. v. Wyoming,* that the Court considered and rejected it, and that we must do likewise.

C. The County further argues that the district court's decision is against the great weight of authority recognizing age as a BFOQ in public safety occupations. The County argues that because it made the same factual record here as in other cases that have upheld age as a BFOQ, age as a BFOQ should have been recognized here. We held in *EEOC v. County of Santa Barbara,* 666 F.2d 373, 376 (9th Cir.1982) that "a factual foundation is necessary to establish that age is a BFOQ." In *Santa Barbara* we stated, "[C]ourts cannot assume, in the absence of any evidence as to its effects on safe performance, that age, per se, constitutes a BFOQ." *Id.* at 377. Similarly, the court in *Stewart v. Smith, supra,* noted that the BFOQ "standard is highly sensitive to the factual record in individual cases,"

673 F.2d at 491, n. 26, and pointed to conflicting 4th Circuit and D.C. Circuit cases reaching opposite results on a maximum age hiring rule for pilots. Thus, we must look to the record in this case, and to the County's specific challenges based on this record, to evaluate the County's BFOQ position.

II.

*Application of Proper BFOQ Standards*

■ A. The County argues that the district court improperly rejected economic considerations of the County in rejecting the County's BFOQ defense. The district court summarized the County's argument as follows:

Defendant next contends that older persons will become unfit for these positions in a shorter time than younger persons .... This it is argued, will result in defendant receiving a less than optimal return on the initial training it provides its deputy sheriffs and helicopter pilots.

526 F.Supp. at 1140. The court rejected this argument, citing *Smallwood v. United Air Lines, Inc.,* 661 F.2d 303 (4th Cir.1981), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299, 73 L.Ed.2d 1302 (1982). We agree. "Economic considerations, however, cannot be the basis for a BFOQ—precisely those considerations were among the targets of the Act." *Id.* at 307.

■ B. The County argues that the district court applied an unduly strict construction of the BFOQ standard for public safety occupations, citing *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 (5th Cir.1976). The *Tamiami* standard has been adopted in this Circuit for Title VII and ADEA BFOQ defenses. *Harriss v. Pan American Airways,* 649 F.2d 670 (9th Cir. 1981) (Title VII); *EEOC v. County of Santa Barbara,* 666 F.2d 373 (9th Cir.1982) (ADEA). The standard requires that the job qualifications be *"reasonably necessary* to the essence of [the] business," and that either "all or substantially all" members of a class "would be unable to perform safely and efficiently the duties of the job in-

volved," or "that it is impossible or highly impractical to deal with" the members of a class "on an individualized basis." *Harriss,* 649 F.2d at 676, citing *Tamiami,* 531 F.2d at 236 and *Weeks v. Southern Bell Telephone & Telegraph Co.,* 408 F.2d 228, 235 (5th Cir.1969).

In applying the test, the district court found that the County had met its burden in establishing that strength, agility, good reflexes and ability to run appreciable distances and lift heavy objects were reasonably necessary to the jobs. 526 F.Supp. at 1139. The district court further found that "there is no strict relationship between age and physical ability," *id.* at 1139, and that physical performance tests can easily distinguish those persons who possess the necessary physical attributes from those who lack them. *Id.*

The County's real concern, however, is its inability to assure itself that persons hired are not suffering from undetected heart disease.

The district court found that "all or substantially all persons above the age of forty years are not unable to meet defendant's health standards due to heart disease." *Id.* at 1140. The district court continued:

considering that only an extremely small percentage of all persons currently barred by defendant's age restrictions are likely to have heart disease and go undetected by the available medical tests, the court concludes that in this regard it is not impractical for defendant to differentiate the qualified from the unqualified applicants. Thus on the second prong of the *Tamiami* test, defendant's age limit policy again fails to pass muster.

Nor is this conclusion altered by the fact that a very small number of persons may conceivably go undetected. In the court's view, *Tamiami* requires only a practical reliable differentiation of the unqualified from the qualified applicant, 531 F.2d at 236, not a perfect differentiation.

*Id.*

The district court applied the BFOQ standard fairly. There was no error here.

C. The County argues that the district court placed too much emphasis on the fact that there are persons over age 40 working in the positions involved. The County emphasizes that this is a case involving maximum age for *initial hiring,* and not for the job itself. The challenged statement of the district court follows:

Indeed, defendant currently employs numerous deputy sheriffs over forty years of age. Also, two of the nine helicopter pilots currently employed by the defendant are over forty. Given these considerations, the court finds it inexplicable that defendant refuses to consider for employment persons over thirty five years of age *who are satisfactorily employed in similar jobs by other government agencies.*

526 F.Supp. at 1139. (emphasis added) The County argued at trial that the experience gained by deputies hired at a young age makes up for the gradual decline in physical fitness that often accompanies the aging process. Despite this argument, the County has no provision to allow the hiring of persons over thirty-five who have extensive similar experience in other governmental agencies. It is clear that the district court's reference is to the contradiction inherent in the County's argument and its policy of not hiring even experienced 35 and over applicants. We read no more into the district court's statement.

■ D. The County argues that the following finding of the District Court is clearly erroneous and alone warrants reversal:

Thus the simple electrocardiogram or cardiokymograph tests will detect 52% of all asymptomatic sufferers. Additionally, the evidence indicates that the Bruce protocol, a stress electrocardiogram test on an inclined treadmill, coupled with an analysis of the individual's risk factors (such as weight, smoking habits, family history, etc.) is 99% accurate as a short-term predictor of the likelihood of cardiac difficulty.

526 F.Supp. at 1140. The County argues that this passage shows that the trial court was confused by the evidence because the most effective readily available procedures, the EKG (electrocardiogram) and CKG (cardiokymograph) tests are only able to detect 52% of all asymptomatic sufferers and that the risk factor analysis adds nothing to this procedure.

First, we must point out that the district court's ultimate conclusion was that "only an extremely small percentage of all persons over the age of thirty-five years applying for the jobs in question are likely to have asymptomatic heart disease and go undetected." 526 F.Supp. at 1140.

This was based on the figure (undisputed on appeal) that approximately 3% of 35 year olds suffer asymptomatic heart disease—heart disease whose symptoms are not readily apparent. It is also undisputed that 52% of this 3% can be detected by a combination of the stress EKG/CKG, tests that are neither difficult nor prohibitively expensive to administer.

The area of disagreement between the County and the EEOC is with the remaining 48% of the 3% of 35 year olds who suffer asymptomatic heart disease—in other words, the disagreement is over the fewer than 1½% of 35 year olds whose asymptomatic heart disease cannot be detected by administration of the EKG/CKG.

The district court clearly credited the testimony of Dr. Mohler, one of the many expert witnesses who testified. Dr. Mohler's testimony did not precisely address whether 99% of all persons with asymptomatic heart disease can be detected; neither does the district court's reference to Mohler's testimony imply that it did. Rather, Dr. Mohler testified that the "studies by Dr. Bruce of Seattle, Washington ... have shown clearly by taking the various risk factors plus an exercise test response, *one can predict with greater than 99 percent probability that within the next twelve months that an individual will not have a cardiac event.*" RT 774 (emphasis added). This is not the same as saying that 99% of all asymptomatic sufferers will be detected.

There is no evidence that the district court was confused, and we decline to reverse on this point.

The district court's conclusion that the County failed to establish a BFOQ is based on findings that are not clearly erroneous.

AFFIRMED.