**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, Appellant,**

v.

**The CITY OF EAST PROVIDENCE, et al., Defendants, Appellees.**

No. 86–1026.

United States Court of Appeals, First Circuit.

Argued June 3, 1986.

Decided Aug. 15, 1986.

Gale Barron Black, with whom Johnny J. Butler, Acting Gen. Counsel, Philadelphia, Pa., Gwendolyn Young Reams, Acting Associate Gen. Counsel, and Vincent Black-wood, Asst. Gen. Counsel, Washington, D.C., were on brief, for plaintiff, appellant.

Joseph C. Salvadore, Providence, R.I., for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

In this action brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1982 & Supp. II 1984) ("ADEA"), plaintiff-appellant Equal Employment Opportunity Commission ("EEOC") appeals from a judgment of the United States District Court for the District of Rhode Island entered in favor of defendants-appellees the City of East Providence and the City Treasurer (the "City"). We affirm.

EEOC brought this action under the ADEA on behalf of five former East Providence police officers who were forced to retire at age 60 pursuant to an East Providence ordinance which required the retirement of city police officers and firefighters at age 60.[1] The district court found for defendants and dismissed the complaint, holding that mandatory retirement at age 60 was a bona fide occupational qualification ("BFOQ") reasonably necessary to the normal operation of the City's police force.

I.

EEOC argues that the district court abused its discretion in not granting its request for a continuance after the court granted the City's motion to amend its answer to include a BFOQ defense. We do not agree.

In an action brought under the ADEA, it is an affirmative defense that "age is a

---

1. The ordinance in question provided,
   Requirements for service retirement.
   Effective November 1, 1975 a member may retire on a service retirement annuity, at his option, upon:
   (a) On or after attainment of age fifty-five years and having at least twenty years of credited service; or
   (b) On attainment of sixty years and having at least ten years of credited service; or
   (c) On completion of twenty-four or more years of credited service, regardless of age. Any member shall be subject to compulsory retirement upon attainment of age sixty.
   The mandatory retirement provision was repealed on October 17, 1983, and reinstated on February 4, 1985. *See* discussion Part III, *infra.*

bona fide occupational qualification reasonably necessary to the normal operation of the particular business...." 29 U.S.C. § 623(f)(1) (Supp. II 1984). The City's original answer made no mention of a BFOQ defense. The parties agree that the City first indicated that it would raise a BFOQ defense in its pretrial memorandum filed in November of 1984, approximately four months before trial.

On February 21, 1985, EEOC filed a motion for summary judgment in which it argued, *inter alia,* that although the City had referred to a BFOQ defense in its pretrial memorandum, the City had neither presented a BFOQ defense in its answer nor come forward with facts sufficient to support such a defense. Thereafter, on February 22, the City moved to amend its answer to include a BFOQ defense. EEOC opposed the motion. When the trial commenced on March 19, 1985, the district court denied EEOC's motion for summary judgment, allowed the City's motion to amend its answer, and denied EEOC's motion for a continuance.

■ EEOC does not so much complain of the court's allowance of the City's motion to amend as it urges that, having granted the motion, the court abused its discretion in denying EEOC's motion for a continuance. EEOC contends that it was unfairly prejudiced by the court's denial of a continuance, because EEOC needed time if it was to procure expert witnesses to rebut the BFOQ defense. EEOC believes it was reasonable for it to have postponed arranging for such witnesses until after the court had acted on the motion to amend.[2]

■ There is no question that EEOC's case was not improved at trial by its failure to call any experts to rebut defendants' BFOQ defense. In rendering judgment for

the City the court "especially noted" that EEOC had presented no expert testimony in support of its position. However, we think that the district court's denial of EEOC's motion for a continuance was not unreasonable.

It would have been obvious that a BFOQ defense was the only viable defense available to the City at the time the parties filed the pretrial memoranda in November of 1984. And the City in fact not only raised the defense in its memorandum at that time, but devoted most of its argument to this issue. It devoted one page to a standing defense which was mooted by federal legislation which became effective in October of 1984. But it devoted four pages to the BFOQ defense. According to the district court (app. at 7), the EEOC took the position in its pretrial memorandum that the City had waived any BFOQ defense by employing some officers over the age of 60—an argument that would be irrelevant if the BFOQ defense were not considered an issue. Moreover, there had been discussion between counsel and the court with reference to the City's use of experts and a specific application to the court for an extension of time to secure their presence (ap. at 38–39). The EEOC apparently felt that it could ignore this application, since it was filed after but on the same day (February 21, 1985) as its motion for summary judgment.

A day later, the City moved to amend by specifying its BFOQ defense, and on February 28th the City objected to the EEOC's motion for summary judgment stressing the BFOQ issue. Then on March 8th, the EEOC opposed the motion to amend, again stressing, in four pages, that the City's BFOQ defense was inconsistent with allowing some officers over age 60 to continue in

---

2. EEOC also argues that the district court's refusal to grant it a continuance contravened D.R.I.R. 12.1(e). Local Rule 12.1(e) provides,

*Effect of pending motion for summary judgment on preliminary pre-trial order.* The preliminary pre-trial order entered in cases where a motion for summary judgment has been filed shall be stayed pending the determination of the motion, at which time new

dates, if necessary, for the close of discovery and filing of pre-trial memoranda shall be set. This rule does not, however, necessarily require the district court to extend the date for trial upon determination of a motion for summary judgment. The question remains whether it was an abuse of discretion for the court to have denied a continuance of the trial.

service. The EEOC devoted only one page to a generalized argument that time was needed to depose any of the City's experts and to prepare the EEOC's own experts. No reference was made to any time-consuming bidding procedure. Finally, although the trial date had been set for March 19th, the EEOC, despite the looming presence of the BFOQ issue, chose to await the fatal day and hope to forestall the amendment or secure a continuance.

We think it was an exercise in brinkmanship for EEOC to appear in court on the first day of a scheduled trial counting on the district court to dismiss the City's BFOQ defense because of a pleading defect. If, as the district court's opinion suggests, EEOC was restricted by regulations which required the agency to engage expert witnesses through a competitive bidding process, EEOC should, at least, have alerted the district court to this problem earlier so as to provide the court with a reasonable opportunity to adjust its calendar. The district court was not made aware of the fact that EEOC was operating under such constraints until the very last minute.

Thus we believe that EEOC was largely responsible for its own dilemma, and are not persuaded that the district court abused its discretion in denying EEOC's motion for a continuance.

## II.

EEOC's principal argument on appeal is that the district court erred in concluding that the City met its burden of proving that the age–60 rule was a BFOQ reasonably necessary to the operation of the East Providence Police Department. In *Western Air Lines v. Criswell,* — U.S. —, 105 S.Ct. 2743, 2751–53, 86 L.Ed.2d 321 (1985), the Supreme Court endorsed the two-tiered analysis which the Fifth Circuit had used in *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir.1976), for analyzing BFOQ defenses. Under this, an employer must first establish that the job qualifications which the employer invokes to justify his discrimination are " '*reason-*

*ably necessary* to the essence of his business.' " *Western Air Lines,* 105 S.Ct. at 2751 (*quoting Tamiami,* 531 F.2d at 236 (emphasis in original)). If the employer succeeds in making this showing, it must then establish that it "is compelled to rely on age as a proxy for the safety-related job qualifications validated in the first inquiry." *Western Air Lines,* 105 S.Ct. at 2751. To prove that age is a valid proxy, the employer must demonstrate *either* that it has " ' "a factual basis for believing that all or substantially all [persons over the age qualifications] would be unable to perform safely and efficiently the duties of the job involved," ' " *or* that "it is ' "impossible or highly impractical" ' to deal with the older employees on an individualized basis." *Id.* at 2752 (*quoting Tamiami,* 531 F.2d at 235).

The district court's findings were consistent with the above format. EEOC does not challenge the court's conclusion, under the second prong of the *Tamiami* test, that the undisputed expert medical testimony established a factual basis for believing that all or substantially all officers over 60 are incapable of effectively performing up to physical standards which the City's experts considered necessary for regular police work, and that "it is impossible or impracticable to determine police officer fitness [of 60–year–olds] on an individual basis." EEOC argues, however, that the district court committed reversible error in finding, under the first prong of the *Tamiami* test, that "physical strength and stamina and the ability to withstand stress are job qualifications reasonably necessary to the performance of the City of East Providence police force."

■ EEOC contends that the City failed to prove that the age–60 rule is a BFOQ "reasonably necessary" to the operation of the East Providence Police Department because, beyond administering a physical examination to officers upon their induction into the force, the City does virtually nothing to ensure that members of the force below age 60 meet the physical fitness standards for which it seeks to use age 60

as a proxy. EEOC maintains that since the City fails to require its younger officers to meet the physical fitness standards that the City's experts testified virtually all officers age 60 and over do not meet, the City cannot now insist that such standards are reasonably necessary to the operation of its police department.[3] We disagree.

In support of this argument, EEOC relies principally on three cases: *EEOC v. Pennsylvania,* 768 F.2d 514 (3d Cir.1985); *Heiar v. Crawford County, Wisconsin,* 746 F.2d 1190 (7th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); and *EEOC v. New Jersey,* 631 F.Supp. 1506 (D.N.J.1986). In *EEOC v. Pennsylvania,* 768 F.2d at 518, the Third Circuit vacated and remanded a case to the district court for reconsideration in light of the Supreme Court's decision in *Western Air Lines* because the district court had simply assumed, without making any particularized factual findings, that good health and physical strength were job qualifications reasonably necessary to the essence of the business of the Pennsylvania State Police. The court noted that the district court's omission was "particularly troubling in light of [EEOC's] allegations that [the Pennsylvania State Police] makes no attempt to monitor the health and physical prowess of younger officers, and indeed permits some of them to remain on the job with serious disabilities." *Id.*

The situation in *Pennsylvania* was different from the present, however. Unlike the district court here, the district court there had not made a supported factual finding that physical prowess and stamina were reasonably necessary to the business of the Pennsylvania State Police. While the Court of Appeals thought it "troubling" that physical requirements were not being monitored, it did not state that it would reject an otherwise supported finding that physical strength and stamina were reasonably necessary solely because the state police failed to demonstrate rigorous enforcement of physical standards in the cases of all of its employees below the age qualification. We believe such a position would be extreme. The ADEA was intended to be used as a shield to protect older employees from discriminatory employment practices, not as a sword to compel employers concerned with public safety to perfect their procedures for assuring the maximum physical fitness of younger employees.[4] As the Supreme Court said in *Western Air Lines,* 105 S.Ct. at 2754, "[w]hen an employer establishes that a job qualification has been carefully formulated to respond to documented concerns for public safety, it will not be overly burdensome to persuade a trier of fact that the qualification is 'reasonably necessary' to safe operation of the business."

Here, following *Western Air Lines,* the district court made a particularized factual finding that physical strength and

---

**3.** At trial, the City introduced the testimony of two experts, Dr. Alexander Lind and Dr. Albert Antlitz. Dr. Lind testified that, in his opinion, only 2½ out of every 100 60–year–olds have the requisite aerobic capacity to do police work. Dr. Lind also testified that it would be time consuming and expensive to test the aerobic capacity of police officers on an individual basis, and that individualized testing would tell no more than his data already indicated. Dr. Antlitz testified that 70 percent of individuals aged 55 to 60 may have a 50 percent occlusion of their coronary arteries and that, although a number of factors contribute to whether an individual will develop coronary artery disease, at age 60 age is the major factor that correlates with an increased incidence of coronary disease. Dr. Antlitz further stated that there was no practical means of detecting coronary heart disease on an individualized basis.

**4.** Defendants' failure strictly to monitor physical standards among younger officers is not necessarily inconsistent with its recognizing that certain levels of strength, aerobic capacity, coronary fitness, etc., are necessary for effective police work. Even when physical standards are not enforced, defendants may believe that *most* of the younger officers will meet the necessary minimums, whereas most of the over–60 officers will not. While imposition of uniform standards would be necessary should the city wish to weed out the occasional unfit young officer, the city may feel that a more relaxed policy will nonetheless suffice to achieve its goal of maintaining a reasonably adequate force most of whose officers possess the requisite physical capabilities.

stamina and the ability to withstand stress are reasonably necessary to the operation of the police department. The district court wrote,

As for the first prong of the BFOQ, there is substantial evidence in the record to support a finding that the work of East Providence patrolmen, patrol sergeants and detectives is physically and mentally demanding. Each of the retired officers testified that they performed one or more of the following tasks as a full time East Providence police officer: chasing a suspected criminal; struggling with a suspect; pushing a car that blocked traffic; arresting a gunman at gun point; engaging in a high speed motor vehicle chase; and rescuing a victim from a burning car. Each testifying officer was, and every current East Providence officer is, sworn to enforce all state laws and city ordinances and to protect person and property of all East Providence citizens. Irrespective of when that officer is on official duty, enforcing the laws and protecting the citizens of East Providence is a twenty-four hour a day, seven days a week job. In light of these demands and obligations, this Court finds that the Defendants have demonstrated that physical strength and stamina and the ability to withstand stress are job qualifications reasonably necessary to the performance of the functions of the City of East Providence police force.

Because we cannot say that these findings are "clearly erroneous," we sustain the district court's findings that the physical strength and stamina and the ability to withstand stress are job qualifications reasonably necessary to the performance of the East Providence police force. Fed.R. Civ.P. 52(a); *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

The decisions in *Heiar v. Crawford County, Wisconsin,* 746 F.2d 1190 (7th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), and *EEOC v. New Jersey,* 631 F.Supp. 1506 (D.N.J.1986),

do not alter this conclusion. In *Crawford County,* 746 F.2d at 1198, in sustaining as not clearly erroneous the district court's finding that a mandatory retirement age of 55 for deputy sheriffs was *not* reasonably necessary for the operation of a police force in a rural county, the Seventh Circuit noted, among other things, that the sheriff's department did not require deputy sheriffs to take annual or other periodic physical examinations at any age. However, nowhere did the Seventh Circuit state that an employer's failure to require physical examinations would, by itself, as a matter of law, *preclude* a finding that physical fitness *was* reasonably necessary to the performance of a job. In *EEOC v. New Jersey,* 631 F.Supp. at 1508–09, in support of the existing age requirement, the district court was presented with a wealth of evidence that the New Jersey State Police had instituted a comprehensive fitness screening program to evaluate the physical fitness of their officers on an ongoing basis. While the existence of such tests reinforces the argument that physical strength and stamina are a necessary requirement, it does not follow that physical abilities are proven to be unnecessary by the mere fact that a police department is slipshod in monitoring the health and fitness of its younger officers. *See* note 4, *supra.* To be sure, a city's acceptance of low physical standards, coupled with other factors, might persuade a district court that physical fitness was not deemed a necessary job qualification by that police force. Some departments, for example, may be so organized as to channel physically deficient officers into clerical and desk jobs. But a police force's failure continuously to monitor physical standards does not, standing alone, compel a finding that physical fitness is not a reasonably necessary job qualification. Such laxity may merely show that, because of inertia or outside pressures, the present leaders of the department are putting up with lower standards than properly they should. The situation could be analogous to a poorly conditioned, overweight, infantry division. The fact the

soldiers are out of condition does not demonstrate that good conditioning is not a necessary qualification for effective soldiering; it may merely demonstrate disorganized leadership or bad morale.

In sum, we reject EEOC's contention that, in order to show that the physical qualifications for which it seeks to use age 60 as a proxy are reasonably necessary to the operation of its business, the City must show that it periodically tests all officers below age 60 to see that they meet these qualifications. Although the physical fitness standards the City imposes on younger officers may leave much to be desired, we do not think that the District Court is thereby precluded from finding that physical fitness is reasonably necessary to the operation of the City's police force.

### III.

Last, EEOC argues that the City cannot claim that the physical qualifications for which it seeks to use age 60 as a proxy are reasonably necessary to the operation of the police department, because (1) the City employs three officers who are over the age of 60 on a full-time basis; and (2) the City permits officers over age 60 to work part time as "retired special officers." We are not persuaded by either one of these contentions.

■ The five officers on whose behalf EEOC is pursuing the present action were all terminated prior to October 17, 1983. On October 17, 1983, as part of the settlement of an ADEA claim brought by several other East Providence police officers, the City repealed the ordinance which required police officers to retire at age 60, and permitted three officers who reached age 60 after the repeal to continue working on a full-time basis on the force. The ordinance was reinstated by the East Providence City Council on February 4, 1985. In our view, the fact that the City repealed the ordinance as part of a settlement agreement (not a judgment that the City had violated the ADEA) in another case does not compel the conclusion that the age 60 requirement is not reasonably necessary to the operation of the police force, particularly since the City has since reinstated the requirement. *See EEOC v. Missouri State Highway Patrol*, 748 F.2d 447, 449–50 (8th Cir. 1984) (legislative judgment entitled to some deference), *cert. denied*, —— U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

■ Similarly, we do not think that the fact that the City permits officers over age 60 to work as "retired special officers" necessarily undercuts the City's claim that mandatory retirement at age 60 is reasonably necessary to the operation of the police force. The evidence at trial showed that retired special officers work part time for the police force on an on-call basis, and are not required to accept assignments unless they choose to take them. Although there was testimony at trial that a retired special officer could be called upon to perform the same duties as a regular police officer, the two officers who testified that they had accepted such employment stated that their only assignments as retired special officers had consisted of directing traffic near highway construction sites and monitoring school crossings. Thus, we think that there was substantial evidence in the record to support the district court's conclusion that the fact that the City permits retirees to work in a limited capacity as retired special officers does not vitiate its claim that mandatory retirement from regular duty at age 60 is reasonably necessary to the operation of the police department.

*Affirmed.*