**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,**

v.

**STATE OF MISSISSIPPI, et al., Defendant-Appellant.**

No. 87–4214.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1988.

John T. Kitchens, Sp. Asst. Atty. Gen., Edwin Lloyd Pittman, Atty. Gen., Amelia Y. Smith, Asst. Atty. Gen., Jackson, Miss., for defendant-appellant.

L. Lawrence Ashe, Jr., Kelly J. Koelker, Atlanta, Ga., amicus curiae.

Peggy R. Mastroianni, Washington, D.C., Jerome C. Rose, E.E.O.C., Mildred Byrd, Brenda Montgomery, G. William Dav-

enport, Birmingham, Ala., Karen H. Baker, E.E.O.C., Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

### Conflict of Laws

The State of Mississippi appeals a finding by the district court, 654 F.Supp. 1168, that a compulsory retirement statute for game wardens[1] violates federal anti-age discrimination law and thus is unenforceable. The state statute retires conservation officers of the Department of Wildlife Conservation at age 60 (as of July 1, 1986; age 62 from July 1, 1985 to June 30, 1986) and sets a maximum hiring age of 35. The Age Discrimination in Employment Act of 1967 (ADEA), on the other hand, provides that it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA does have an "escape clause" which allows employers some limited flexibility in using age as a factor in business decisions. It provides that it is *not* unlawful for "an employer ... to take any action otherwise prohibited under subsection[s] (a) [age as an employment criteria] ... where age is a bona fide occupational qualification reasonably necessary to the normal operation of a particular business...." 29 U.S.C. § 623(f)(1). Apart from this "escape clause," the command of the ADEA against the use of age as a criterion to discriminate among employees collides with the policy preference of the Mississippi legislature. Because the Supreme Court has read the ADEA to preempt the field with respect to age discrimination, *see EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), unless Mississippi can show—and the district court believed that it did not—that its policy preference re-

flected a bona fide occupational criterion, its statute is not valid. It is, however, Mississippi's continued argument that age is a "bona fide occupational qualification *reasonably necessary* to the normal operation of a particular business"—that of conservation officer—that constitutes the essence of this appeal (emphasis added).

### The Boundaries of "Reasonably Necessary"

The Supreme Court has shaped decision-making guidelines for determining when age should be considered reasonably necessary as a job qualification. *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) provides the basic interpretation of the ADEA as it applies to state and local governments. In *EEOC v. Wyoming,* a Wyoming statute providing for the retirement of game wardens at age 55 (unless further employment was approved by the employer) was held to violate the ADEA. The extension of the ADEA was said *not* to "'directly impair' the State's ability to 'structure integral operations in areas of traditional governmental functions.'" 460 U.S. 226, 239, 103 S.Ct. 1054, 1062, 75 L.Ed.2d 18 (1983). Thus the Court maintained that Wyoming remained free to set its retirement policy if it could demonstrate a BFOQ. *See id.* at 240, 103 S.Ct. at 1062.

The extension of the ADEA to the states was intended, said the Court, to decrease the motivation to engage in age discrimination based "on stereotypes *unsupported* by objective fact." *Id.* at 231, 103 S.Ct. at 1057 (emphasis added). The dissent in *Wyoming,* however, disagreed with the cost-benefit calculation, contending that the extension intruded too far into the governance of local affairs in that Congress "lacked the means to analyze the factors that bear on the decision, such as the diversity of occupational risks, climate, geography, and demography." *Id.* at 264, 103 S.Ct. at 1075 (Burger C.J., Powell J., Rehnquist J. and O'Connor J., dissenting). The dissent noted that the "authority and re-

---

1. Miss.Code Ann. § 49–1–15 (Supp.1985).

sponsibility for making employment decisions should be in the hands of local governments, subject only to those restrictions unmistakably contemplated by the Fourteenth Amendment." *Id.* Responding to these concerns about federalism, Congress clarified its position: 1986 amendments to the ADEA permit States to "fail or refuse to hire or to discharge any individual because of such individual's age ... with respect to the employment of ... a firefighter or as a law enforcement officer ... in effect under applicable State or local law on March 3, 1983 [for a seven-year period] and pursuant to a bona fide hiring or retirement plan...." 29 U.S.C. § 623(i)(1) & (2). Congress, however, voiced its continuing concern about stereotypes unsupported by objective fact by conditioning this deference to state decision-making on a requirement that the state plan not be "a subterfuge to evade the purposes of the chapter." 29 U.S.C. § 623(i)(2).

*Western Air Lines v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985), further refined the Supreme Court's application of the ADEA to the states by offering standards by which to limit the boundary between federal and state powers. The case evaluated the content of jury instructions on a BFOQ defense against an airline that had an age–60 retirement for flight engineers. The Court noted that the legislative history of the ADEA indicated that the BFOQ "escape clause" was meant to be "extremely narrow." 472 U.S. at 412, 105 S.Ct. at 2751.

The Court crafted a two-pronged inquiry to set the width of the "extremely narrow" BFOQ exception. First, in order to establish a BFOQ defense to such an age-based qualification, it is relevant to ascertain whether " 'the job qualifications which the employer invokes to justify his discrimination [are] *reasonably necessary* to the essence of his business....'" (472 U.S. at 413, 105 S.Ct. at 2751, quoting *Tamiami* ).

Second, since age qualifications must be more than merely convenient to the employer, he must demonstrate that he "is compelled to rely on age as a proxy for the [essential] job qualification validated in the first inquiry." 472 U.S. at 414, 105 S.Ct. at 2751. This second prong can be satisfied by "establishing either (a) that it [the employer] had reasonable cause to believe that all or substantially all persons over the age qualification would be unable to perform safely the duties of the job, or (b) that it is highly impractical to deal with the older employees on an individualized basis." *Id.* These two prongs are derived from and closely resemble similar guidelines set forth by our Court in *Usery v. Tamiami Trail Tours,* 531 F.2d 224 (5th Cir.1976), which focused on a company's policy of refusing to hire persons over age–40 as inter-city bus drivers.

Each of the two prongs serves a different purpose in relating the specific circumstances of a case to the purposes of the ADEA. In *Criswell,* the Court explains the significance of the first prong which it drew from *Tamiami.* Proof is needed that a job qualification is "reasonably necessary" to the normal operation of the particular business because some qualifications may be "so peripheral to the central mission of the employer's business that *no* age discrimination can be 'reasonably *necessary....*' " *See, Western Air Lines v. Criswell,* 472 U.S. at 413, 105 S.Ct. at 2751. In this way, the "reasonably necessary" criterion serves as a basic check against qualifications so peripheral as to be, in light of the 1986 congressional amendments, non-essential to the job.[2]

▆ Employers are entitled to articulate the qualifications they consider essential to their businesses and to exercise substantial discretion in judging the reasonableness of safety-related job qualifications. Yet such decisions must be supported by objective fact in order to comply with the ADEA. As

---

**2.** In *Tamiami,* Judge Brown had offered a "plain meaning" reading of "reasonably necessary": "Typically statutory, the words 'reasonably necessary to the normal operation of its business,' are not normally of the variety that suggest hand-wringing, earth-shaking, heart-rending decisions of great moment." *Usery v. Tamiami Trail Tours,* 531 F.2d 224, 226 (5th Cir.1976).

recognized by the 1986 congressional amendments to the ADEA, such employment decisions by a state are at the heart of federalism.

■ The second prong inquires whether age is a necessary proxy for the essential—in the cases of bus companies and airlines, safety-related—job qualification being sought. An employer must show either that all or substantially all persons over the age limit would be unable to perform the job safely and efficiently or that it was "impossible or highly impractical to deal with older employees on a individualized basis." 472 U.S. at 414, 105 S.Ct. at 2752 (footnote omitted). The employer could establish that "some members of the discriminated-against class possess a trait precluding safe and efficient job performance that cannot be ascertained by means other than knowledge of the applicant's membership in the class." *Id.* Thus the first prong of the test inquires whether an essential job qualification is at stake, the second whether age is a necessary proxy for that qualification.

### Legislative Discretion as to the Boundaries of "Reasonably Necessary"

Although we held, in *Tamiami*, that employers are entitled to substantial discretion in judging the reasonableness of qualifications, the Supreme Court has left undefined the boundaries of employers' discretion—in this case a state legislature's—in weighing the three considerations it has identified.

Recent circuit court decisions have sought to fill in the remaining gap left by the Supreme Court's analysis in balancing the competing values of antidiscrimination and federalism. In reversing a district court's invalidation of a mandatory retirement age, the Eighth Circuit pointed out that the Missouri General Assembly had made a "legislative judgment that the age restrictions ... [were] in the best interest of the Patrol and the people the Patrol serve[d] throughout the state ... [and that the court] should accord some deference to the state legislative declaration." *Equal Employment Opportunity Commission v. Missouri State Highway Patrol*, 748 F.2d 447, 450 (8th Cir.1984). The court cautioned, however, that while concern for federalism was a consideration, it did not "relieve the Patrol from the burden of showing that each of these restrictions is a BFOQ." *Id.* In this circumscribed way, the court set an outside limit on discretion by the legislature as to what was reasonably necessary.

*Equal Employment Opportunity Commission v. Commonwealth of Pennsylvania*, 829 F.2d 392 (3rd Cir.1987) more precisely identified the burden that the employer was required to meet in demonstrating a BFOQ reasonably necessary for a job. The court held that Pennsylvania could not justify its mandatory retirement age for state troopers because it had not "developed, implemented and enforced" minimum standards of health and fitness that would justify the BFOQ. The court distinguished a recent case, *EEOC v. New Jersey*, 631 F.Supp. 1506 (D.N.J.1986), *aff'd*, 815 F.2d 694 (3rd Cir.1987), in which New Jersey's mandatory requirement law for state police officers was *upheld* against an ADEA challenge 829 F.2d at 396. In that case, the district court found that all members of the New Jersey State Police, whatever their ages, were subject to minimum fitness standards and that all or substantially all officers over age 55 could not meet those standards. It is the finding of minimum standards that are "developed, implemented and enforced" that provides the threshold limiting an employer's discretion in establishing a BFOQ defense. Not only would a finding of minimum standards limit an employer's discretion, but also it would satisfy the Supreme Court's concern to decrease stereotypes unsupported by objective fact and would ensure both that a good faith decision on required qualifications was made by a competent authority and that the use of age as a proxy was proper.

■ Despite this minimum standards limitation on an employer's discretion to articulate what is reasonably necessary, a court must be especially cautious when

dealing with legislatures for the "task is admittedly a most difficult and often impossible one, since legislatures are not known for providing clear guidance to those interpreting their works". *See Aguillard v. Edwards*, 778 F.2d 225, 227 (5th Cir.1985) (dissent from denial of Petition for Rehearing En Banc) (scrutinizing legislative motivation for secular purpose in an establishment of religion case). For this reason, a court examining the discretion available to an employer must exercise special care when the employer is a legislature.

*Mississippi's Legislative Determination*

■ It is likely that Mississippi's age qualifications for game wardens would have passed muster had the Mississippi legislature "developed, implemented and enforced" *minimum standards* of health and fitness and shown that nearly all conservation officers over age sixty could not meet those standards or that individual determinations were impossible. Since the Supreme Court's concerns would have been satisfied, our task would have been simply to defer to a decision by a competent authority. That did not take place, however; and because it did not, there is no essential job qualification in this case that age can stand as a proxy *for*.

The district court has made factual findings, which we do not find to be clearly erroneous, that: (a) no legislative history existed for the enactment, 654 F.Supp. at 1172; (b) "the mandatory retirement age for conservation officers was sold to the legislature ... without first instituting health and fitness policies within the Department," *id.;* (c) "no standards [were] presented to the family physician to guide him in his determination that the candidate [was] healthy," *id.* at 1174; (d) there were no physical fitness or health standards that were used for retention of supervisors, lake and area managers, and conservation officers in the Fisheries and Wildlife Department, *id.* at 1175. There being no such standards, age cannot serve as their proxy.

This being so, the district court correctly reasoned that Mississippi failed the first prong of the *Criswell* test. The court, however, went further in its analysis and examined *"arguendo"* whether the Mississippi enactment would have passed the second prong of the *Criswell* test. Such an analysis was unnecessary, and we express no opinion on its validity. It will be time to consider such matter when and if Mississippi sets qualifications, such as health and fitness, that are circumscribed by minimum standards. In that event, proper deference, especially since the decision-maker is a legislature, must be afforded with respect to the social choices that it makes.

Because Mississippi failed to establish health and fitness qualifications reasonably necessary for the job of conservation officer and for which age may be a valid proxy, the BFOQ "escape clause" of the ADEA is not available. Miss.Code Ann. § 49–1–15 (Supp.1985) thus plainly violates the ADEA, and it is unenforceable. This district court order is therefore

AFFIRMED.