EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,

v.

KENTUCKY STATE POLICE DEPARTMENT, et al., Defendants–Appellees.

No. 87–5193.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 3, 1987.

Decided Nov. 1, 1988.

Rehearing and Rehearing En Banc Denied Jan. 13, 1989.

---

Harriett Miller Halmon, Carolyn Howard, E.E.O.C., Memphis, Tenn., Justine S. Lisser (argued), E.E.O.C., Washington, D.C., for plaintiff-appellant.

Frank E. Haddad, Jr. (argued), Gary R. Hillerich, Louisville, Ky., for defendants-appellees.

Before ENGEL, Chief Judge,* KENNEDY, Circuit Judge, and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS Jr., Senior Circuit Judge.

The EEOC is plaintiff and appellant in this action in which certain state police officers joined by the EEOC are appealing a decision entered by the United States District Court for the Eastern District of Kentucky. At issue is a Kentucky statute establishing a mandatory retirement age of 55 years. The plaintiffs in this action contend that the Kentucky statute, by establishing the mandatory 55 age limit for employment, violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. Defendants contend that the 55–year limit is a Bona Fide Occupational Qualification.

The United States District Court took testimony from both parties in a three-day bench trial and then held for the defendants holding the 55–year limit to be a bona fide occupational qualification.

Some of the essential facts of the dispute are set forth in the following paragraph from the District Judge's opinion:

> This is a close case. The court carefully considered the testimony and the arguments submitted by both sides before

---

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

concluding that defendant met its burden of proving that cardiovascular fitness and aerobic capacity are traits reasonably necessary to the performance of a Kentucky State Police officer's job. After long periods of job-related sedentary activity, driving a police car, or investigating crimes, an officer may be called upon to engage in periods of highly stressful activity. That police officers sometimes must pursue a fleeing suspect on foot or subdue a captured suspect is not merely a product of the Hollywood imagination. Indeed the possibility of such occurrences is undisputed in this case.

We believe this reasoning is sound on the statements related therein. But it does not take into account the total and the crucial facts of this case.

This record shows that Kentucky State Police has no program for regular testing of all of its officers for physical fitness.[1] At one time, Commissioner Elkins testified Kentucky State Police tried giving physical fitness tests to all members of the force but abandoned the practice. Elkins explained "it was putting people in the hospital rather than keeping them on the road working."

The record also discloses that Kentucky State Police permits officers to remain on the job in spite of known heart attacks or by-pass surgery. Equally important, in the facts with which we are confronted, is the fact that Kentucky State Police has no program for testing or maintaining the physical or the cardiovascular health of its officers. In fact, the record discloses that one veteran of the force died on patrol in his cruiser as a result of his fourth heart attack.

It is not, of course, the function of this court to tell the Kentucky State Police Commissioner how to operate its police force.

It is however, required of this court that we define whether or not Kentucky's "mandatory retirement age of 55 years" is a bona fide occupational qualification. The record in this case convinces us that it is not. First, this record demonstrates that the Kentucky State Police Force has no program for testing the fitness of its officers either as to aerobic or cardiovascular health. We recognize that there are such fitness tests for a "special response team." Each Post has one such team. Each member of that team is given regular physical fitness tests including timed mile run in full gear, push-ups and sit-ups.

Still further bearing on the bona fides of the Kentucky State Police program are the facts, that the agency repeatedly permitted officers under the age of 55 who had known health problems including heart conditions to remain on the job with no diminution of duties, and that officers who had had heart attacks or by-pass surgery had been retained on the force. A 25–year veteran of the force, Eugene Coffey, died of his fourth heart attack at the age of 49 while on routine patrol in his cruiser.

One of the state expert witnesses, Dr. Lind, a physiologist, testified that an aerobic capacity of three liters was the number required for successful performance of all Kentucky State Police personnel. But on cross-examination, Dr. Lind admitted that most of the women officers and some competent Kentucky State Police male officers are unable to meet the three liter aerobic capacity test.

EEOC's expert witness was Dr. Pollock, a physiologist, and while he admitted that aerobic capacity is related to age, he also cited other factors such as genetics, general health, and lifestyle habits, including smoking, alcohol consumption and amounts of exercise. EEOC's other expert, Dr. Leon, a cardiologist, stated there was an increasing risk of coronary artery disease as people get older. He estimated the risk factor as being that six people out of 100 over the age of 55 would have a coronary event within 10 years. Dr. Leon also testified that if persons who smoked were elimi-

1. Each Post, however, does have a "special response team" which is subject to vigorous physical tests.

nated, physical examinations could tell with almost 100% accuracy who would be at risk of a coronary event within the next 10 years of life.

█ On appellate review of the District Court's finding in an employment discrimination case, we are required not to set aside findings of fact unless on appeal we can say that they are clearly erroneous and, of course, we are required to give due regard to the findings of the trial judge on the credibility of witnesses. See F.R.C.P. 52(a) and *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

We turn now to the actual language of the statute which controls this case. The Age Discrimination in Employment Act, 29 U.S.C. § 623 states as follows:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

\* \* \* \* \* \*

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business....

The Supreme Court of the United States set forth the purposes of the Act just quoted in its decision in *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 410–411, 105 S.Ct. 2743, 2749–50, 86 L.Ed.2d 321 (1985). In *Criswell*, the Supreme Court said:

Increasingly, it is being recognized that mandatory retirement based solely upon age is arbitrary and that chronological age alone is a poor indicator of ability to perform a job. Mandatory retirement does not take into consideration actual differing abilities and capacities. Such forced retirement can cause hardships

for older persons through loss of roles and loss of income. Those older persons who wish to be re-employed have a much more difficult time finding a new job than younger persons. Society, as a whole, suffers from mandatory retirement as well. As a result of mandatory retirement, skills and experience are lost from the work force resulting in reduced GNP. Such practices also add a burden to government income maintenance programs such as social security. H.R.Rep. No. 95–527, pt. 1, p. 2 (1977).

The *Criswell* case established that under the ADEA an employer must first establish that job qualifications are *"reasonably necessary* to the essence of his business." *Criswell*, 472 U.S. at 413, 105 S.Ct. at 2751 (quoting *Usery v. Tamiani Trail Tours, Inc.*, 531 F.2d 224, 236 (5th Cir.1976)). (Emphasis in original). If successful in this endeavor, the employer must then show that it "is compelled to rely on age as a proxy for the safety-related job qualifications validated in the first inquiry." 472 U.S. at 414, 105 S.Ct. at 2751.

The record in this case is similar to that in the case involving a Pennsylvania mandatory retirement statute for its state police. The court concluded:

The factual findings supporting the district court's treatment of the first prong of the BFOQ defense do not include the determination that the department in fact presently requires all state troops to maintain a minimum level of health and fitness. Nor would the record support such a finding. This factual deficiency convinces us that the district court committed clear error in concluding that the PSP had demonstrated a bona fide occupational qualification reasonably necessary to its business.... Until minimum standards are developed, implemented and enforced, the PSP cannot justify its mandatory retirement law by relying on good health and physical conditioning as BFOQs reasonably necessary to PSP business.

*EEOC v. Pennsylvania*, 829 F.2d 392, 395 (3rd Cir.1987).

We recognize that the District Court in this case relied on *EEOC v. City of East Providence*, 798 F.2d 524 (1st Cir.1986).

We believe its assumptions, however, are contrary to the legislative history of ADEA. Rejecting the *East Providence* case, the Third Circuit said:

> The *East Providence* court wrote:
>
> The ADEA was intended to be used as a shield to protect older employees from discriminatory employment practices, not as a sword to compel employers concerned with public safety to perfect their procedures for assuring maximum physical fitness of younger employees.
>
> *Id.* at 529. The court stated that in establishing a mandatory retirement law to achieve its fitness goal, the city could rely on its belief that most younger officers will meet the necessary minimums. *Id.* at 529, n. 4.
>
> We disagree. We believe this is precisely the kind of employment discrimination that Congress sought to eliminate by enacting the ADEA. Before a characteristic can be a reasonably necessary BFOQ, it must be a trait that the employer at least attempts to require of employees of all ages. In any event, the district court did not find that most younger officers possess the purported BFOQs. And, in fact, the record suggests the contrary.

*EEOC v. Pennsylvania*, 829 F.2d 392, 396 (3rd Cir.1987).

See also *Heiar v. Crawford County, Wisconsin*, 746 F.2d 1190, 1198 (7th Cir. 1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), but see *EEOC v. Missouri State Highway Patrol*, 748 F.2d 447 (8th Cir.1984), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

We recognize that ADEA has recently been amended to permit police and firefighters to be mandatorily retired until 1993. Congress, however, explicitly exempted all causes of action arising under ADEA before January 1, 1987 from this change.

There is no doubt, of course, that Congress can authorize mandatory age limits for law enforcement personnel in the various states. We read *Johnson v. Mayor and City Council of Baltimore*, 472 U.S. 353, 370, 105 S.Ct. 2717, 2726, 86 L.Ed.2d 286 (1985), as clear indication that the Supreme Court does not believe Congress has done so in language applicable to our instant case.

The judgment of the District Court holding that the Kentucky State Police 55–year age limit is a bona fide occupational limitation is reversed. The case is remanded to the District Court for any further proceedings which may be required.

ENGEL, Chief Judge, dissenting.

I respectfully dissent. Contrary to the conclusion of the majority, I agree with United States District Judge Bertelsman that the Kentucky State Police Department has adequately demonstrated a bona fide occupational qualification in this case.

In *EEOC v. Tennessee Wildlife Resources Agency*, 859 F.2d 24 (6th Cir.1988), a companion case which we heard with this case, plaintiffs challenged the mandatory retirement age for Tennessee conservation officers. In that case, despite the fact that mandatory retirement would protect older conservation officers from the dangers of working alone and far from any assistance, I concurred in invalidating the mandatory retirement policy; the record there disclosed inconsistent application of the policy and revealed a lack of bona fides by the State of Tennessee.

This case, however, discloses no such lack of good faith by the Kentucky State Police. Accordingly, I would affirm for the reasons set forth in Judge Bertelsman's district court opinion of December 17, 1986.