**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff–Appellant,**

v.

**MISSISSIPPI STATE TAX COMMISSION, Defendant–Appellee.**

No. 87–4659.

United States Court of Appeals, Fifth Circuit.

May 22, 1989.

Peggy R. Mastroianni, Atty., Charles A. Shanor, Gen. Counsel, E.E.O.C., Washington, D.C., for plaintiff-appellant.

John T. Kitchens, Asst. Atty. Gen., Richard D. Mitchell, Sp. Asst. Atty. Gen., Bobby R. Long, Chief Atty., Miss. State Tax Com'n, Edwin Lloyd Pittman, Atty. Gen., Jackson, Miss., for defendant-appellee.

Before CLARK, Chief Judge,
GOLDBERG, GEE, RUBIN, REAVLEY,
POLITZ, KING, JOHNSON,
WILLIAMS, GARWOOD, JOLLY,
HIGGINBOTHAM, DAVIS, JONES,
SMITH and DUHE, Circuit Judges.

REAVLEY, Circuit Judge:

The Equal Employment Opportunity Commission (EEOC) challenges the mandatory retirement at age 60 of Mississippi State Tax Commission scales enforcement officers. The district court found age to be a bona fide occupational qualification, justifying the mandatory retirement state law [1] within the Age Discrimination in Employment Act.[2] The work of these officers who enforce Mississippi revenue laws pertaining to commercial vehicles and highways is explained in the court's opinion at 693 F.Supp. 516. A panel of this court reversed the judgment and remanded for back pay determinations, holding that the Mississippi Commission failed to establish that physical fitness was an occupational qualification in the absence of any minimum standards or any attempt to monitor employees' health and fitness. 848 F.2d 526, 530. The en banc court declines to hold that physical fitness can never be held to be reasonably necessary for job performance unless the employer has established formal standards and monitoring procedures, but we believe the district court incorrectly failed to consider all of the evidence on the issue. We vacate the judgment and remand for further consideration.

## I.

To qualify under the BFOQ exception to the ADEA, an employer must show: (1) The job qualifications invoked to justify the age discrimination must be reasonably necessary to the normal operation of the particular business, and (2) age is a necessary proxy for those job qualifications, either because (a) there is a factual basis for believing that all or substantially all people over a certain age would be unable to satisfy those job qualifications, or (b) there is proof that individual testing for those job qualifications is impossible or highly impractical. *Western Air Lines v. Criswell*, 472 U.S. 400, 413–15, 105 S.Ct. 2743, 2751–52, 86 L.Ed.2d 321 (1985); *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 235 (5th Cir.1976).

Some courts hold that an employer is precluded from making the first showing, i.e., that the age related qualification is necessary, by a failure to develop, implement, and enforce minimum standards for that qualification. *See EEOC v. Commonwealth of Pennsylvania*, 829 F.2d 392, 395 (3d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1109, 99 L.Ed.2d 271 (1988); *accord EEOC v. Kentucky State Police Dept.*, 860 F.2d 665, 668–69 (6th Cir.1988). Other courts treat the enforcement, or lack of enforcement, of minimum standards as evidence—giving it different probative value—on the issue of the necessity of the asserted job qualifications. *See EEOC v. Missouri State Highway Patrol*, 748 F.2d 447, 454 (8th Cir.1984), *cert. denied*, 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) ("Moreover, the relevance of a physical fitness program to the issues ... is questionable."); *EEOC v. New Jersey*, 631 F.Supp. 1506, 1508 (D.N.J.1986), *aff'd*, 815 F.2d 694 (3d Cir.1987) (the police department's commitment to maintaining the continued health and fitness of its officers forecloses any serious dispute that those qualifications are essential to the safe and efficient performance of their duties); *EEOC v. City of East Providence*, 798 F.2d 524, 530–31 (1st Cir.1986) ("low physical standards, coupled with other factors, might persuade a district court that physical fitness was not deemed a necessary job qualification" by that employer); *Heiar v. Crawford County, Wis.*, 746 F.2d 1190,

---

1. Miss.Code Ann. § 27–5–75 (Supp.1988).

2. 29 U.S.C. § 623. The 1986 amendment concession for state laws affecting firefighters and law enforcement officers, § 623(i), is not applicable to the present case because it began prior to January 1, 1987.

1198–99 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985) ("[i]f Crawford County required [periodic physical exams or fitness tests] it could argue (we need not decide with what success) that this showed the genuineness of its concern with the physical fitness of its deputy sheriffs").

A prior panel of this circuit drew upon the Third Circuit's writing when it affirmed the district court's rejection of Mississippi's mandatory retirement age for game wardens. *EEOC v. Mississippi*, 837 F.2d 1398 (5th Cir.1988). We do not disagree with that panel, and the trial judge, in stressing the weight of standards of health and fitness in the fact determination; we only say that physical fitness may be a job qualification despite the lack of formal standards. The weight to be given the existence or absence of formal standards is for the fact finder to decide, with its finding subject to the appropriate appellate review on the entire record. The *Criswell* opinion emphasizes the importance of fact finding on a "case-by-case basis" under the ADEA structure. 105 S.Ct. at 2755.

## II.

To satisfy the first prong of the *Tamiami* test, the district court found: "that the MSTC has clearly established that physical stamina and the ability to withstand the stressful working conditions are essential to the safe and efficient execution of the duties of a Scales Enforcement Officer." 693 F.Supp. at 526. In view of the failure of the court to discuss the evidence supporting the EEOC's contention that health and fitness were in fact ignored by the Commission, the stated finding may refer to an ideal scales officer force—or what *might* be done—rather than the operation Mississippi actually has in place. The Chairman of the Mississippi State Tax Commission insisted that the officers are required to be physically fit in order to perform their tasks, and the Commission presented substantial evidence of tasks and challenges which could be managed only by officers with stamina and the ability to handle stress. The difficulty with the evidence and the district court's finding is not only that the Commission had no periodic physical examinations or fitness tests. The EEOC elicited testimony that scales enforcement officers, on the whole, fail to exemplify the type of employee the Commission contends is required for the job. An expert witness called by the EEOC, Dr. Arthur Leon, stated his opinion that a quarter of the employees are overweight, over two-thirds smoke cigarettes, few exercise, and quite a few have serious medical problems. Among the medical problems of current employees under retirement age are diabetes, orthopedic problems, mental problems, and high blood pressure. The district court did not discuss this evidence and may have confused the distinct inquiries raised under the two separate prongs of the *Tamiami* test. If so, the district court is not alone. *See Missouri State Highway Patrol*, 748 F.2d at 454; *cf. Heiar*, 746 F.2d at 1198 (the court's simultaneous treatment of both prongs of the BFOQ inquiry prompts confusion from its discussion of minimum standards and of impossible or impracticable individual testing).

Under the first prong, the employer must establish that certain job qualifications—in this case, physical stamina and the ability to withstand stress—are reasonably necessary to *the normal operation* of the particular business. The inquiry looks neither to the good faith of Commission officials nor to the ideal highway tax enforcement program, but to the normal operation of this program in Mississippi. Whether the employer Commission enforces the stated job qualifications by standards and tests or otherwise is certainly relevant to the determination of this first prong. If standards are employed (for example, by testing performance of physical exercises designed to mirror the purported job qualifications as in *New Jersey*, 631 F.Supp. at 1508), it tends to show that employees must be physically fit regardless of their age.

Under the second prong, the employer must establish that age is a necessary proxy for the stated job qualifications, and one method of proof is to show that it is impossible or highly impractical to test individual employees for those qualifications.

For example, testing may demonstrate present ability but fail to disclose the heart disease that could fell the older officer on the occasion of his next stressful exertion. Courts must remember that the significance of physical examinations and performance tests differs with the separate *Tamiami* inquiries.

We remand the case to the district court to consider fully the Commission's enforcement, or lack of enforcement, of the stated job qualifications of physical stamina and the ability to withstand stress. We do not reach the second prong of the *Tamiami* test. The district court may elect to take further evidence, and may—in resolving declaratory relief—consider the job qualifications under present operations if changes have occurred.

JUDGMENT VACATED; CAUSE REMANDED.

ALVIN B. RUBIN, Circuit Judge, with whom GOLDBERG, POLITZ, JOHNSON, and JERRE S. WILLIAMS, Circuit Judges, join concurring in part and dissenting in part:

The majority opinion points to no error of law by the district court. While it states only that "the district court incorrectly failed to consider all of the evidence," the majority must therefore have concluded that, on the record, the district court's findings of fact were clearly erroneous, for that is the only basis on which it might reverse the judgment.[1] I agree that the district court reached the wrong result on the record before it. That is no reason, however, to give the losing party a new chance to try to prove what it had the

burden to prove and has manifestly failed to show: that physical fitness and ability to withstand stress were reasonably necessary to enable its employees to perform the duties that were incumbent on them in the normal operation of its business at the time it forced retirement on all of its employees who were over the age of 60.

The establishment of *formal* standards of fitness is not, of course, a prerequisite to showing the reasonable necessity of good health, but to demonstrate that business necessity requires physical fitness of older employees, the employer must show that at least some standards of fitness, formal or informal, are required for *all* employees.[2] Physical fitness cannot be exacted only of older employees, for that sort of difference in employment requirements is patently discriminatory. I, therefore, concur in that part of the majority opinion reversing the district court, but I dissent from the remand of the case, which the record demonstrates is bound to be futile, and which has never been sought by the Mississippi State Tax Commission.

The Mississippi State Tax Commission insists on retiring persons over age 60 who are willing and able to do the work they have always done although it has never shown that these employees are any less able physically to do their jobs than the younger employees who are actually at work. In accordance with regulations promulgated by the Equal Employment Opportunity Commission,[3] the Supreme Court in *Western Air Lines v. Criswell*[4] has held that the BFOQ defense must be " 'construed narrowly' " and given " 'limited scope and application' "[5] because it is " 'an extremely narrow exception to the general

1. Fed.R.Civ.Proc. 52(a).

2. *See EEOC v. Mississippi*, 837 F.2d 1398, 1401 (5th Cir.1988); *see also EEOC v. Kentucky State Police Dept.*, 860 F.2d 665, 668–69 (6th Cir.1988); *EEOC v. Tennessee Wildlife Resources Agency*, 859 F.2d 24, 26 (6th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989); *EEOC v. Pennsylvania*, 829 F.2d 392, 395 (3rd Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1109, 99 L.Ed.2d 271 (1988); *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1198–

1200 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *but see EEOC v. City of East Providence*, 798 F.2d 524, 528–31 (1st Cir.1986).

3. 29 C.F.R. § 1625.6 (1988).

4. 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985).

5. *Criswell*, 472 U.S. at 412, 105 S.Ct. at 2750 (quoting 29 C.F.R. § 860.102b (1984)).

prohibition' " against age discrimination.[6] Referring to the findings of the House Committee Report that "chronological age alone is a poor indicator of ability to perform a job," the Court emphasized that the ADEA applies with special force in the case of mandatory-retirement provisions.[7] Forced retirement can not only impose hardships on older persons but inflicts costs on society as a whole because skills and experience are lost from the work force, resulting in reduced gross national product and greater cost for government income-maintenance programs, such as social security.[8]

The ADEA, therefore, requires that disqualification to work on account of age be something more than "convenient" or "reasonable." As the majority opinion correctly emphasizes, such discrimination must be "reasonably necessary ... to the particular business," which means that, when the qualification is a "reasonable factor" other than age, the employer must be compelled to rely on age as its proxy.[9]

The majority opinion discusses some of the evidence showing that the MSTC did not exact physical stamina and the ability to withstand stressful working conditions from employees who were less than 60 years old. It is unnecessary, therefore, to detail the ample additional evidence that the MSTC used only very broad minimum standards of health and fitness when hiring employees, made no attempts to monitor employees' health and fitness once they were on the force, and did not require all its younger employees to perform the most physically demanding and hazardous tasks.

The record reveals that the MSTC did not, in fact, retire employees over age 60 because their poor health or advancing years made them less able to perform their jobs than younger scales-enforcement officers, but because the MSTC wanted to rid itself of employees who had been appointed for political reasons and who could not be weeded out in any other fashion. Thus, the district court's opinion recounts how the MSTC decided to institute its mandatory retirement plan:

> The Chairman of MSTC at the time the MVCO [the MSTC's predecessor] was abolished was A.C. Lambert, Sr. Lambert determined that extraordinary measures would have to be taken to improve the enforcement arm of the former MVCO. Testimony contended that the MVCO had been abolished due to lack of management, political cronyism, and, generally, inefficient enforcement of the law. Lambert called upon the experience and resourcefulness of a career law enforcement officer, Wood Stringer, to make recommendations for the contemplated needed reorganization. Lambert and Stringer agreed that the positions requiring closest scrutiny were those inspection station employee positions referred to as Revenue Inspectors or Field Inspectors.
>
> Stringer became Administrative Assistant to Lambert and set out to conduct a thorough investigation and analysis of the positions in question. He found that these positions had been used to repay political obligations, often without regard to experience, age, or physical capability. Though some hired persons had a law enforcement background, this was the exception rather than the rule.
>
> Under MVCO, many of the persons hired simply did not do the job.[10]

In its petition for rehearing en banc, the MSTC recites:

> Testimony presented during the course of the trial by witnesses for both the MSTC and the EEOC clearly demonstrated that the operation of the MVCO prior to July 1, 1980, suffered from management inefficiencies, corruption, inadequate leadership, political cronyism, and

---

6. *Id.* (quoting *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977)); *see Usery v. Tamiami Trail Tours,* 531 F.2d 224 (5th Cir.1976).

7. *Id.,* 472 U.S. at 410, 105 S.Ct. at 2750 (quoting H.R.Rep. No. 95-527, pt. 1, p. 2 (1977)).

8. *Id.*

9. *See Tamiami,* 531 F.2d at 235.

10. 693 F.Supp. 516, 517-18 (S.D.Miss.1987).

most importantly a lackadaisical approach to the enforcement of the laws which that agency was charged by statute with enforcing.

In its brief to the en banc court, the MSTC repeats this assertion.

MSTC supposed that this background would prove its need to establish age as a proxy for physical fitness. Instead this history demonstrates that the state did not adopt its mandatory retirement program to ensure that the MSTC scales-enforcement officers would be as healthy and fit as younger employees, but to weed out political hacks by attrition.

Why then should this case be remanded? It has once been tried. The MSTC bore the burden of establishing the existence of a BFOQ. It failed to do so. There is, therefore, no justification for requiring the district court to ascertain again whether the MSTC has, on the record now before us, proved that health and fitness and the ability to withstand stress were reasonably necessary to the essence of its business, or to afford it a second opportunity to provide evidence it failed to supply the first time. The MSTC has never asked, either in its brief or in oral argument, for the opportunity to do so.

Indeed, what new evidence could the MSTC now adduce? It might bring forth additional evidence of what it expects of scales officers, but it cannot show that it has exacted the same physical requirements of officers below the age of 60 as it has of officers over age 60. It has never suggested that it has discovered new evidence, let alone asked for an opportunity to adduce it.

The majority's remand for additional findings is occasioned by its unwillingness to conclude that an employer must develop, implement, and enforce minimum standards of health and fitness in order to rely on these characteristics as BFOQs, an unwillingness that it qualifies by referring to "formal standards." In this respect, it makes the same error of law that the district court made: the error of assuming that age can ever be a proxy for a quality unless that quality is in fact demanded of younger employees. Unless standards of some kind, formal or informal, are adopted to determine the fitness and stress-resiliance required of younger employees, age cannot be a substitute for determining the absence of those qualities.

An employer that requires its older employees to possess the attributes it does not specifically exact of younger employees violates the older employees' right to work, a right the ADEA was designed to protect. In the absence of *any* minimum standards to determine, or *any* serious attempt to monitor, other employees' health and fitness, an employer fails to lay a factual foundation upon which a court may rest a finding that specified degrees of health and fitness are reasonably necessary to the essence of its business.

For these reasons, I would not remand the case but would reverse the judgment of the district court.