Dear William W. Sondervan, Ed.D.
You have requested our opinion whether the Division of Correction ("DOC") may require that applicants for correctional officer positions in its facilities be at least 21 years old. You note that the Correctional Training Commission ("CTC") recently amended its regulations setting selection standards for correctional officers to lower the minimum age for entry-level positions from 21 to 18.
A DOC policy that required an applicant to be at least 21 years old would violate the Maryland statute that prohibits age discrimination in employment unless the DOC could establish that a minimum age of 21 is a "bona fide occupational qualification" ("BFOQ") for a correctional officer. To establish a minimum age of 21 as a BFOQ, the DOC must be able to demonstrate that: (1) a job qualification related to the minimum age requirement is reasonably necessary to the essence of operating correctional facilities; and (2) the DOC is compelled to rely on age as a proxy for that qualification. In our opinion, it would be difficult for the DOC to make that showing in light of the lower minimum age established by the CTC, the agency charged with setting statewide standards for correctional officers.
 I CTC Standards
Under State law, a person may be employed as a correctional officer only if the person "satisfactorily meets minimum qualifications established by the [CTC]." Annotated Code of Maryland, Correctional Services Article ("CS"), § 8-209(a). The CTC, an agency of the Department of Public Safety and Correctional Services ("DPSCS"), was created in 1971. See Chapter 213, Laws of Maryland 1971, now codified as amended at CS § 8-201 et seq. The CTC currently is comprised of 12 members, including the Deputy Secretary of DPSCS, the Commissioner of Correction, the president of the Maryland Correctional Administrators Association, the president of the Maryland Sheriffs Association, and a designee of the Federal Bureau of Prisons. CS § 8-204.
With respect to applicants for correctional officer positions, the CTC has adopted regulations that set minimum standards related to age, residency, education, background investigations, health examinations, interviews, and other matters. See COMAR 12.10.01.04. For nearly 20 years, the CTC had set 21 as the minimum age for a correctional officer in Maryland.[1] However, effective January 7, 2002, the CTC amended its regulation to lower the minimum age for correctional officer applicants to 18.[2] See 28:26 Md. Reg. 2274 (December 28, 2001), codified at COMAR 12.10.01.04. According to the minutes of the CTC meetings at which this change was discussed, the chief purpose of lowering the minimum age was to create a larger applicant pool for those local jurisdictions that were having difficulties recruiting correctional officers. Minutes, February 26, 2001 Meeting of the Maryland Correctional Training Commission, at pp. 9-10; Minutes, November 28, 2000 Meeting of Maryland Correctional Training Commission, at pp. 7-8.
We understand that a question has arisen whether the DOC and other correctional agencies may maintain 21 as a minimum age for correctional officer applicants, in light of the prohibition in State law against age discrimination in employment.
 II Anti-Discrimination Law A. Prohibition Against Age Discrimination
The State anti-discrimination law generally prohibits discrimination in employment based on a variety of criteria, including age.[3] Annotated Code of Maryland, Article 49B, § 14 et seq. More particularly, the statute provides that:
(a) It shall be an unlawful employment practice for an employer:
(1) To fail or refuse to hire. . .any individual. . . because of such individual's . . . age . . .
(2) To limit, segregate, or classify its . . . applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of the individual's . . . age . . . .
Article 49B, § 16(a). The State is an employer for purposes of this statute. See Article 49B, § 15(b). The general rule against age discrimination is, however, subject to an exception.
B. Bona Fide Occupational Qualification
Discrimination in employment on the basis of age is permissible in limited circumstances. The anti-discrimination law provides:
(g) . . . (1) it is not an unlawful employment practice for an employer to hire . . . employees . . . on the basis of the individual's religion, national origin or disability in those instances where sex, age, religion, national origin or disability is a bona fide occupationalqualification reasonably necessary to the normal operation of that particular business or enterprise . . . .
Article 49B, § 16(g)(1) (emphasis added).[4] Thus, State law recognizes a BFOQ defense to a claim of age discrimination in hiring.
The statute itself does not define the phrase "bona fide occupational qualification," and we have found no reported Maryland cases that construe that phrase in the context of age discrimination. The federal Age Discrimination in Employment Act ("ADEA")[5] contains essentially identical language regarding circumstances in which age discrimination is permitted. See 29 U.S.C. § 623(f)(1) (not unlawful for employer to discriminate by age "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business"). Accordingly, interpretations of the BFOQ provisions of the ADEA are persuasive in interpreting the parallel exception in the State anti- discrimination law. 62 Opinions of the Attorney General 705, 706-7 (1977).
The Supreme Court has characterized the BFOQ provision of the ADEA as "an extremely narrow exception" to the general prohibition against age discrimination. Western Air Lines v. Criswell, 472 U.S. 400, 412 (1985). In Criswell, an airline that required flight engineers to retire at age 60 defended that policy on the ground that the mandatory retirement age was reasonably necessary to airline safety and therefore came within the BFOQ exception. To evaluate that defense, the Supreme Court adopted the two-step analysis developed by the Fifth Circuit in Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir. 1976).
First, the job qualifications that an employer invokes to justify discrimination must be "reasonably necessary to the essence" of the employer's business. Criswell, 472 U.S. at 413 (quoting Tamiami,531 F.2d at 236). In Criswell, the Court accepted the airline's contention that the good health of flight crew members was reasonably necessary to the operation of the airline. Id. at 418.
Second, the employer must be "compelled to rely on age as a proxy" for the job qualification validated in the first inquiry. Criswell,472 U.S. at 414. The employer could make this showing by establishing either (1) that it had "reasonable cause to believe . . . that all or substantially all [persons over the age qualification] would be unable to perform safely and efficiently the duties of the job," or (2) that it was "impossible or highly impractical" to deal with older employees on an individualized basis) e.g., if "some members of the discriminated-against class possess a trait precluding safe and efficient job performance that cannot be ascertained by means other than knowledge of the applicant's membership in the class." Id. at 414-15 (quoting Tamiami,531 F.2d at 235).
A federal statute establishing an age criterion for a particular occupation might support a finding that the age limit is a BFOQ if Congress considered evidence relevant to the inquiry under the ADEA. Thus, "[t]he evidence Congress has considered, and the conclusions it has drawn therefrom, might be admissible as evidence in judicial proceedings to determine the existence of a BFOQ for nonfederal employees." Johnson v. Mayor and City Council of Baltimore, 472 U.S. 353, 370-71 (1985). However, in Johnson itself, the Supreme Court held that federal legislation setting a mandatory retirement age of 55 for federal firefighters did not represent a congressional decision that a maximum age of 55 is a BFOQ for firefighters generally.
 III Analysis A. BFOQ Test Applied to Minimum Age Limit for New CorrectionalOfficers.
To justify the use of a minimum age of 21 to screen applicants for correctional officer positions, the DOC must first articulate job qualifications related to that criterion that are reasonably necessary to the "essence of the business" of operating correctional facilities and safeguarding prisoners. Second, there must be a factual basis for relying on age as a proxy for those qualifications — either because all or most applicants between 18 and 21 would not meet those qualifications or because it would be impossible or highly impractical to test or examine for the qualifications on an individual basis.
In several cases under the ADEA involving maximum age limits for law enforcement officers that allegedly served as proxies for the officer's fitness, courts have concluded that the age criterion was not a BFOQ because the agency had not established or had not enforced standards for health and fitness that would apply to officers of all ages. Some cases found that the age limit failed the first prong of the Tamiami analysis. See, e.g., EEOC v. Kentucky State Police Department, 860 F.2d 665, 668-69
(6th Cir. 1989) (mandatory retirement age of 55 for state police officers not BFOQ when agency had no program for testing health and fitness of all officers); EEOC v. Mississippi, 837 F.2d 1398, 1402 (5th Cir. 1988) (maximum hiring and retirement ages for game wardens failed first prong of BFOQ analysis when there were no minimum health and fitness standards for such officers); EEOC v. Pennsylvania, 829 F.2d 392, 395-96 (3d Cir. 1987) (mandatory retirement age for state police officers not BFOQ in absence of evidence that agency required all troopers to maintain minimum level of health and fitness); but see EEOC v. City of East Providence,798 F.2d 524, 529 (1st Cir. 1986) (upholding mandatory retirement age because "city could rely on its belief that most younger officers will meet the necessary standards"); EEOC v. New Jersey, 631 F. Supp. 1506, (D.N.J. 1986), aff'd, 815 F.2d 694 (3d Cir. 1987) (upholding mandatory retirement age for state troopers after finding that state required continued health and fitness of all officers, that 95% of officers above retirement age would lack necessary level of aerobic fitness, and that it was not practically possible to ascertain which officers suffered from asymptomatic heart disease associated with age).
Other courts have accepted health and fitness as a reasonably necessary job qualification, but found age to be an inadequate proxy for that qualification under the second prong of the Tamiami analysis. For example, in EEOC v. County of Los Angeles, 526 F. Supp. 1135 (C.D.Cal. 1981) the court found that a maximum age of 35 was not a BFOQ for an entry-level position as deputy sheriff or helicopter pilot in the fire department. With respect to the first prong of the Tamiami analysis, the court accepted that physical agility, strength, good reflexes, and the ability to run and lift heavy objects were job qualifications reasonably necessary to the essence of the employer's business. It rejected, however, the county's arguments that the general correlation between age and physical ability could justify an age restriction under the second part of the Tamiami analysis. In reaching its conclusion, the court found that many persons over the age of 40 possess the strength, agility, and other characteristics for these jobs, while many persons under 40 do not. The court also found that simple, inexpensive, and reliable physical performance tests would allow the employer to distinguish between applicants who met the qualifications and those who did not.526 F. Supp at 1140. The court similarly rejected the assertion that increased heart disease among older persons satisfied the second Tamiami prong, because an individualized determination of cardiovascular fitness could be made through the use of medical tests. Id. at 1141.
These cases suggest that, to the extent that a minimum age requirement is conceived of as a proxy for job qualifications relating to social maturity and sound judgment, the DOC would have the burden of showing that it has attempted to apply that qualification in some way to all applicants. We are aware of no federal or State statutory age criteria that might support, in the manner suggested in Johnson, that a minimum age of 21 is a BFOQ for a correctional officer position.[6]
A regulation establishing an age criterion for a law enforcement position may support a finding that the particular age limit is a BFOQ for the position. In a 1977 opinion, Attorney General Burch considered the legality, under the State anti-discrimination law and the ADEA, of a Maryland Police Training Commission ("PTC") regulation limiting applicants for attendance at an approved police training school to persons between the ages of 21 and 36.[7] 62 Opinions of the Attorney General 705, 706 (1977). That opinion applied the Tamiami analysis for BFOQs, and concluded that "the regulation in question could qualify as a bona fide occupational qualification necessary to the normal operation of police personnel with law enforcement functions" and that the regulation did not appear to violate federal or Maryland employment discrimination laws. Id. at 709. That conclusion was based on the premise that the PTC, in adopting the regulation, had made a "considered" factual determination that the minimum and maximum age requirements satisfied the two prongs of the Tamiami test. The opinion cautioned that, if no factual determination had been made, the regulation would not survive challenge under the State and federal age discrimination laws. Id. at 710.
Under the rationale of the 1977 opinion, a CTC regulation establishing a minimum age for correctional officers could support a finding that age is a BFOQ for a correctional officer position, if the CTC applied the factors identified in Tamiami to select a minimum age. Thus, during the 20 years that the CTC had set a minimum age of 21 for correctional officers, the CTC regulation might have supported a BFOQ defense of a minimum age requirement of 21 years for DOC correctional officers. However, as you noted in your request, the CTC recently lowered the minimum age for correctional officers from 21 to 18 years. The recent amendment of the CTC regulation has different consequences for the BFOQ analysis.
B. Impact of Recent Amendment of CTC Regulation
Because it allows for correctional officer candidates as young as 18, the amended regulation would not support a BFOQ defense for a minimum age greater than 18. This is especially so if one assumes, as Attorney General Burch did in the 1977 opinion, that the CTC made a considered factual determination and applied the Tamiami analysis. Does the new regulation negate any possibility that a minimum age criterion of 21 could be justified as a BFOQ for DOC correctional officers? In our view, the CTC regulation does not absolutely preclude the DOC or another correctional agency from establishing a minimum age of 21 for applicants as a BFOQ. The CTC regulation is meant to state "minimum" qualifications for the position. It is conceivable that work as a correctional officer in a particular type of institution may demand qualifications that exceed the minimum in some respect. Indeed, emphasizing that they set "minimum" standards, the CTC regulations explicitly allow correctional agencies to set higher standards. COMAR 12.10.01.04H. However, the CTC regulation does place a heavy burden on a corrections agency to identify an important job qualification for which the agency requires higher-than-minimum standards, and to garner facts to meet its burden under Criswell to show that an age difference of three years is a valid proxy for that qualification.
Thus, the CTC's recent adoption of the regulation allowing correctional officer candidates to be as young as 18 appears to undermine an argument that a minimum age of 21 is a BFOQ for a correctional officer position.
 IV Conclusion
A DOC policy that required an applicant for a correctional officer position to be at least 21 years old would violate the Maryland statute that prohibits age discrimination in employment unless the DOC could establish that such an age criterion is a BFOQ for a correctional officer. The lower minimum age for correctional officers established by the CTC, the agency charged with establishing statewide standards for correctional officers, likely would make it difficult for the DOC to meet that burden.
 J. Joseph Curran, Jr. Attorney General
 Alan D. Eason Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] Initially, the CTC set a minimum age of 18. See 2:10 Md. Reg. 760 (May 14, 1975) (adopting COMAR 12.10.01.03B, which required candidates for training schools to be at least 18); 5:5 Md. Reg. 325 (March 10, 1978) (amending COMAR 12.10.01.03B to apply the 18-year age requirement to candidates for certification as correctional officers); 8:10 Md. Reg. 877 (May 15, 1981) (revising COMAR 12.10.01.03 to make 18-year age limit a requirement for both selection and certification as correctional officer).
In 1982, the CTC extensively revised the standards for correctional officers and established a minimum age of 21. See 9:22 Md. Reg. 2197 (October 29, 1982) (adopting new COMAR 12.10.01.02 with minimum 21-year age requirement for probationary appointment). That age limit was retained in a later revision of the CTC standards. See 24:21 Md. Reg. 1451 (October 10, 1997) (including 21-year age limit in COMAR12.10.01.04).
[2] In a practical sense, it appears that 18 is the youngest minimum age that the CTC could have set for a correctional officer, given the restrictions under State and federal law on the employment of minors. See, e.g., Annotated Code of Maryland, Labor Employment Article, § 3-201 et seq.
[3] Discrimination in employment by the State based on age might also give rise to a claim under the Equal Protection Clause of the Fourteenth Amendment. However, because age is not a suspect classification, an employer need only show that its actions are "rationally related to a legitimate state interest." Massachusetts Board of Retirement v. Murgia,427 U.S. 307 (1976). Age discrimination statutes such as the State anti-discrimination law or the federal Age Discrimination in Employment Act impose "substantially higher burdens." Kimel v. Florida Board of Regents, 528 U.S. 62, 82-90 (2000). Accordingly, any classification of correctional officer applicants based on age that will pass muster under the anti-discrimination law is unlikely to offend the Fourteenth Amendment.
[4] Literally read, § 16(g)(1) permits discrimination only on the basis of religion, national origin, or disability, even though it also lists "sex" and "age" as possible bona fide occupational qualifications. In our view, the awkward wording of the statute is simply a drafting error, as it is generally accepted that the BFOQ defense provided by this subparagraph applies to claims of age discrimination. See Gaither v. Anne Arundel County, 94 Md. App. 569, 578 n. 2, 618 A.2d 244 (1993) ("Maryland recognizes that . . . age . . . may be a bona fide occupational qualification").
[5] The ADEA does not directly pertain to your question, because the federal statute applies only to age discrimination against "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Thus, it is no surprise that there are no cases construing the BFOQ exception under the ADEA with respect to a minimum age requirement for police or correctional officers.
[6] The State Regulated Firearms Law generally forbids the sale or transfer of a handgun to a person under the age of 21 — a restriction presumably based on a legislative judgment as to when a young person is mature enough to receive a handgun, a necessary piece of a correctional officer's equipment. See Annotated Code of Maryland, Article 27, § 442(b)(2)(vi), 442(h)(2)(vi). However, that law does not apply to law enforcement officers acting within the scope of their official duties. Article 27, § 441A(3); see also Annotated Code of Maryland, Criminal Law Article, § 4-203 CRIM. LAW. previously codified as Article 27, § 36B(c)(1)(iv) (general prohibition against carrying handgun not applicable to prison guards); Article 27, § 36E(a)(1) (handgun permit may be issued to person 18 years of age or older). Thus, it cannot necessarily be inferred that the General Assembly was making any judgment about a minimum age for armed correctional officers.
[7] The Police Training Commission ("PTC") fulfills a function analogous to that of the CTC, including setting standards for the training and approval of police officer candidates. See Annotated Code of Maryland, Article 41, § 4-201(d)(3) (eligibility standards for attendance at police training schools); § 4-201(d)(6) (certification of persons as police officers who meet PTC's standards); § 4-201 (d)(11) (PTC rulemaking authority). Currently, the PTC has set a minimum age of 21 for certification as a police officer. COMAR12.04.01.04A(1). The regulations no longer set a maximum age.
 *Page 187